513 P.2d 717

**Lucy M. ROMERO, Individually and as Administratrix of the Estates of Celestino Martinez and Lucia C. Martinez, and A. J. Romero, Individually and as agent of such Administratrix, Plaintiffs-Appellants,**

v.

**Bertrand B. PRINCE, Defendant-Appellee.**

**No. 1118.**

Court of Appeals of New Mexico.

Aug. 15, 1973.

James B. Alley, Jr., Mitchell, Mitchell & Alley, Santa Fe, for plaintiffs-appellants.

William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

The appeal is concerned with an allegedly defamatory statement made by an attorney and the defense that the statement was absolutely privileged.

Lucy and A. J. Romero, are wife and husband. Lucy is the administratrix of her parents' estates. Administration proceedings were begun in 1967 and were pending at the time of the alleged defamation in May, 1971. Albert Martinez is a brother of Lucy. Albert had a claim against the estates which was reduced to judgment in 1969. At the time of the alleged defamation, this judgment had not been paid.

A dispute arose as to whether a tract of land—La Elfega—had been the property of the deceased parents. Lucy asserted it belonged to the parents; Albert claimed it belonged to him. Lucy, as administratrix, brought suit. This suit, filed and at issue in 1968, involved the ownership of La Elfega. This suit was also pending at the time of the alleged defamation.

Lucy, as administratrix, orally leased La Elfega to Feliberto Maestas. Two receipts for rent paid by Maestas were signed by or on behalf of Lucy. These receipts do not show they were signed as administratrix or on behalf of the estates.

The oral lease of La Elfega to Maestas began in the fall of 1970. During the term of the lease, and while Maestas had his cattle on La Elfega, Albert informed Maestas "* * * that the land on which I was grazing my cattle belonged to him and not the estate for which Lucy Romero was administratrix. * * *"

Disturbed by the conversation with Albert, Maestas went to defendant Prince for advice, knowing "* * * that Mr. Prince represented Mr. Albert Martinez in a lawsuit over the land in question. I was seeking Mr. Prince's advice because, as lessee of the land, I was directly affected by that lawsuit. * * *"

Prince represented Albert in the proceedings as a result of which Albert became a judgment creditor of the estates. Prince also represented Albert in the suit involving the ownership of La Elfega. Mr. J. H. Burttram was the attorney for the administratrix, both in the administration of the estates and in the suit involving ownership of La Elfega.

After Maestas conferred with Prince, Prince wrote a letter to Burttram with a copy to Maestas. This letter referred to

**476**

the lease, the ownership of La Elfega, and the way the rent receipts had been signed. It asked for an accounting of money received by the administratrix. It also asked that plaintiffs return the rent money paid by Maestas.

The foregoing facts come from depositions and affidavits and are undisputed.

Prince's letter also contained statements which plaintiffs claim amount to libel per se. We do not decide this contention; we assume the statements are a libel per se.

Plaintiffs sought damages for libel and for interference with the business and contractual relations of plaintiffs and Maestas. The trial court granted summary judgment for defendant. Plaintiffs' appeal abandons the "interference" claim. The issue is the propriety of summary judgment for defendant on the libel claim.

III Restatement of Torts, § 586 (1938) states:

"An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto."

Comment (a) to § 586, supra states: "The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth or even his knowledge of its falsity. * * *" Compare Stryker v. Barbers Super Markets, Inc., 81 N.M. 44, 462 P.2d 629 (Ct.App. 1969).

The trial court granted summary judgment on the basis that Prince's letter was absolutely privileged. In doing so, it ruled that Prince's letter related to proposed and ongoing judicial proceedings and was writ-

ten in the course of Prince's legal representation of Maestas.

Plaintiffs assert the trial court's ruling is wrong for two reasons. First, they challenge the ruling that the letter was written in the course of Prince's representation of Maestas. The undisputed showing is that Prince wrote the letter on behalf of his client, Albert, and also on behalf of Maestas. The argument is that the showing is insufficient to show that Prince was acting as attorney for Maestas. Second, plaintiffs contend that even if Prince was acting as attorney for Maestas, the letter was not a communication either preliminary to, in the institution of or during the course of a judicial proceeding. As a part of this second reason, plaintiffs assert a defamatory communication by an attorney preliminary to a proposed judicial proceeding is not absolutely privileged.

█ It is not necessary to answer the foregoing contentions. As plaintiffs point out, if the trial court " * * * reached the right result for the wrong reason, this Court may affirm the judgment of the District Court. * * *" See Beall v. Reidy, 80 N.M. 444, 457 P.2d 376 (1969).

It is undisputed that Prince was the attorney for Albert and that the letter was written on Albert's behalf. Plaintiffs agree that a defamatory statement of an attorney is absolutely privileged if the statement is made during the course of and as a part of judicial proceedings and is related to those proceedings. Thus, if the absolute privilege applies in connection with Prince's representation of Albert, the trial court is to be affirmed even if its reasoning as to Maestas and to defamation preliminary to judicial proceedings should be wrong.

Plaintiffs contend Prince's letter was not written during the course of or as a part of judicial proceedings because: (1) the letter was written "well after" the administration proceedings and the lawsuit involving La Elfega had been instituted and (2) a copy of the letter had been sent " * * * to a third party [Maestas] who had noth-

ing to do with either pending legal proceeding. * * *" Neither contention defeats application of the privilege in this case.

■ "* * * It is not absolutely essential, in order to obtain the benefits of absolute privilege, that the language claimed to be defamatory be spoken in open court or contained in a pleading, brief, or affidavit. * * *" Zirn v. Cullom, 187 Misc. 241, 63 N.Y.S.2d 439 (1946). If the alleged defamatory statement is made to achieve the objects of the litigation, the absolute privilege applies even though the statement is made outside the courtroom and no function of the court or its officers is invoked. Smith v. Hatch, 271 Cal.App.2d 39, 76 Cal.Rptr. 350 (1969). Negotiation of a settlement is part of a judicial proceeding. Petty v. General Accident Fire & Life Assurance Corp., 365 F. 2d 419 (3rd Cir. 1966). The showing in this case, from the deposition of A. J. Romero, is that Burttram and Prince "* * * had been discussing this case back and forth and exchanging letters. They were trying to obtain a settlement."

We need not decide whether Prince's letter can be characterized as part of the settlement negotiations because it clearly was written to achieve Albert's object in the pending litigation. The letter was written during the course of and as a part of judicial proceedings.

■ In Theiss v. Scherer, 396 F.2d 646, 36 A.L.R.3d 1321 (6th Cir. 1968), the attorney defendant wrote the allegedly defamatory letter to the attorney for plaintiffs in regard to the administration of an estate. Copies of the letter were sent to persons who had an interest in the estate referred to in the letter. Distribution of the copies of the letter did not defeat the privilege because the copies went only to persons who had a direct financial interest in the settlement of the estate. Absolute privilege was applied because the letter and its copies were relevant to and made during the course of a judicial proceeding.

Our case is similar to Theiss v. Scherer, supra. Prince's letter went to opposing counsel Burttram. A copy went to Maestas who was "directly affected" by the lawsuit over La Elfega. The letter was "relevant" to that lawsuit. We do not, however, adopt the "relevancy" test for application of the privilege. In Stryker v. Barbers Super Markets, Inc., supra, concerning defamatory matter in judicial pleadings, we held the defamatory matter must be "reasonably related" to the subject of inquiry. We see no reason for a different rule in connection with statements by attorneys. Such statements, to be privileged, must be "reasonably related" to the judicial proceeding in the course of which the statement is made. See Smith v. Hatch, supra.

We hold the allegedly defamatory letter of Prince was made during the course of and as a part of a judicial proceeding and was reasonaby related to that proceeding. Accordingly the letter was absolutely privileged. The trial court properly granted summary judgment for defendant.

The summary judgment is affirmed.

It is so ordered.

HENDLEY and LOPEZ, J., concur.