KATHERINE MCMANUS *v.* JOSEPH H. SWEENEY
(AC 22867)

Lavery, C. J., and Bishop and West, Js.

---

[13] Hoddinott concluded that the plaintiff did not prove common-law fraud.

Argued March 24—officially released July 29, 2003

*Katrena K. Engstrom*, with whom, on the brief, was *John R. Williams*, for the appellant (plaintiff).

*Michael T. Ryan*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Katherine McManus, appeals from the summary judgment rendered by the trial court in favor of the defendant, Joseph H. Sweeney. On appeal, the plaintiff claims that the court improperly determined that the defendant was absolutely privileged to publish defamatory statements contained in a letter he wrote to Hugh Barber, an assistant attorney general for the state of Connecticut. We affirm the judgment of the trial court.

The pleadings, affidavits and other documentary information presented to the court reveal the following facts. The plaintiff initiated this action against the defendant, an attorney, asserting claims of defamation and negligent infliction of emotional distress. The plaintiff, at all times relevant to the action, was employed as a social worker by the department of social services (department). The first count of the plaintiff's complaint sounded in defamation and alleged that on or about March 12, 1999, the defendant wrote a letter to Barber, an assistant attorney general, "in which [the defendant] falsely and maliciously accused [her] of taking actions injurious to a ward of the Probate Court, of overstepping her role as an employee [of the department], [of] violating the policies and procedures, of the department . . . and of violating the rights of a ward of the Probate Court." The second count of the plaintiff's complaint contained similar allegations and asserted a claim for negligent infliction of emotional distress. The defendant answered the complaint, admitting only that he wrote a letter to Barber on or about March 12, 1999, and asserted four special defenses. The contents of the letter are not in dispute.

On November 6, 2001, the defendant filed a motion for summary judgment as to both counts of the plaintiff's complaint, claiming that he was absolutely privileged to publish the allegedly defamatory statements contained in the letter to Barber. Specifically, the defendant claimed that his statements were absolutely privileged both because they were published in the course of and in relation to a judicial proceeding, and because they were published in the contemplation of an administrative, or quasi-judicial, proceeding. On February 26, 2002, the court granted the defendant's motion for summary judgment because it determined that the letter was published in connection with a pending Probate Court proceeding and that it was published in furtherance of

(preliminary to) an administrative or quasi-judicial proceeding.[1] This appeal followed. Additional facts will be set forth as necessary.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

On appeal, the plaintiff claims that the court improperly determined that the defendant was absolutely privileged to publish the statements contained in his letter to Barber. Specifically, the plaintiff claims that the defendant was not absolutely privileged to publish the contents of the letter because (1) the defendant's letter cannot be construed as having been written "in the course of" a judicial proceeding, and (2) "viewing the

---

[1] The court granted summary judgment as to both counts of the plaintiff's complaint because it determined that the "[absolute privilege] . . . operates not only to preclude the plaintiff's cause of action for defamation . . . but also operates to preclude the plaintiff's cause of action for negligent infliction of emotional distress under the second count." Although the plaintiff challenges the court's conclusion that the defendant is entitled to an absolute privilege, she has not claimed that such a privilege, if applicable, would not apply to the negligent infliction of emotional distress claim. It is, therefore, unnecessary for us to address the issue of whether an absolute privilege also would bar a claim of negligent infliction of emotional distress founded on the same conduct as the defamation claim. Because we conclude that the defendant was absolutely privileged to publish the allegedly defamatory letter to Barber, summary judgment was properly rendered on both counts of the plaintiff's complaint.

defendant's letter as an attempt to initiate an administrative proceeding is insufficient to bring the letter within the immunity that would attach to a participant in such a proceeding for statements made therein." We conclude that the court properly determined that the defendant was entitled to an absolute privilege from liability for defamation because the letter was published during the course of a judicial proceeding.[2] We therefore affirm the judgment of the trial court.[3]

The plaintiff claims that the court improperly determined that the defendant was absolutely privileged to publish his letter because the letter could not properly be construed as having been written "in the course of" a judicial proceeding.[4] We disagree.

"The effect of an absolute privilege in a defamation action is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." *Kelley* v. *Bonney*, 221 Conn. 549, 565, 606 A.2d 693 (1992). "There is a long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of

---

[2] For purposes of this opinion, we assume, but do not decide, that the defendant's letter contained defamatory statements.

[3] Because our conclusion that the defendant is absolutely immune from defamation liability because his letter was published in the course of a judicial proceeding is dispositive of this appeal, we need not reach the issue of whether the letter was published preliminary to a quasi-judicial proceeding.

[4] In support of her claim, the plaintiff discusses a laundry list of prosecutorial immunity cases and, apparently, equates this case to various cases in which courts have denied absolute immunity to prosecutors. We agree with the defendant that "it is difficult, if not impossible, to decipher from the plaintiff's brief an argument which supports application of the principle of 'prosecutorial immunity' " to this case. The defendant in this case is not a prosecutor, nor was he acting in a prosecutorial manner when he published his letter. We therefore conclude that the principle of prosecutorial immunity is not applicable to this case and that the cases cited by the plaintiff are inapposite to the case before us.

the controversy." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986). Thus, "we . . . [afford] to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings." *Mozzochi* v. *Beck*, 204 Conn. 490, 494–95, 529 A.2d 171 (1987); *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 64 Conn. App. 192, 199, 779 A.2d 822 (2001), rev'd in part on other grounds, 260 Conn. 766, 802 A.2d 44 (2002); see also *Blakeslee & Sons* v. *Carroll*, 64 Conn. 223, 232 (1894), overruled in part on other grounds, *Petyan* v. *Ellis*, supra, 243; see *DeLaurentis* v. *New Haven*, 220 Conn. 225, 263 n.22, 597 A.2d 807 (1991); 3 Restatement (Second), Torts § 586, p. 247 (1977).

"The 'judicial proceeding' to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. . . . This privilege extends to every step of the proceeding until final disposition. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature." (Citations omitted; internal quotation marks omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 246. "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) Id.

The following additional facts are necessary for our resolution of the plaintiff's appeal. At the time the defendant wrote the allegedly defamatory letter at issue, he

was the court-appointed attorney for Christopher McManus, the plaintiff's father, in a pending Probate Court proceeding regarding the appointment of a permanent conservator for Christopher McManus' person and estate. The letter sets forth, inter alia, the events and circumstances that led to the defendant's belief that the plaintiff may have improperly used her position with the department to engage in some impropriety with regard to the Probate Court proceeding.[5] The defendant's purpose in writing the letter was to request that an investigation be made into the plaintiff's conduct

---

[5] The defendant's letter alleged that the plaintiff, after being appointed temporary conservatrix of her father, kept him unnecessarily and against his will in a locked mental health unit at Bridgeport Manor. It further alleged that during the course of a March 1, 1999 Probate Court hearing, held for the purpose of appointing the plaintiff as permanent conservatrix of her father, Lilly Allen, a regional ombudsmen, LTC Ombudsman Program of the department, made the point before the court that Christopher McManus had been deprived of the use of a telephone, that the plaintiff, in her role as conservatrix, allowed him no visitors and that his confinement at the Bridgeport Manor exceeded the restrictions appropriate to a person in his condition. The letter also stated that at the same hearing, Dorcas White, a "social worker for the Protective Services for the Elderly of the Department," recommended that an independent evaluation of Christopher McManus be obtained before the court made any determination as to the appointment of a permanent conservator. The letter stated that the court stayed the hearing pending an evaluation of Christopher McManus, which the court ordered.

The letter then related the content of some discussions the defendant had with Allen and White after the March 1, 1999 Probate Court hearing, but before the court-ordered evaluation of Christopher McManus had been obtained. According to the letter, White received a telephone call from the Fairfield Probate Court, telling her that the court had been advised by Marie Verep, a friend of the plaintiff's and fellow employee of the department, that White had been removed from Christopher McManus' case. White was given no reason for her removal from the case. She told the defendant that Verep was not a social worker with the department and, therefore, did not have authority to remove White from the case or to advise the court of such removal. With regard to the defendant's conversations with Allen, the letter stated that Allen had informed the defendant that Christopher McManus' rights were violated by the limiting of his telephone calls and visitors, and that she believed that the plaintiff had overstepped her role as an employee of the department in violating Christopher McManus' rights.

as it related to the Probate Court proceeding concerning Christopher McManus. Specifically, the letter requested that the attorney general's office investigate whether the plaintiff improperly had used her position with the department to violate Christopher McManus' civil rights and whether the plaintiff had engaged in some impropriety with regard to having Dorcas White, a social worker with the department, removed from Christopher McManus' case.

In the present case, it is undisputed that there was a pending Probate Court proceeding concerning the appointment of a permanent conservator for Christopher McManus, the defendant's client. A Probate Court proceeding regarding the appointment of a permanent conservator of a person and his estate is a type of "judicial proceeding" to which the privilege would attach. This case, therefore, requires us to consider whether the subject letter was published *in the course of* that judicial proceeding. Whether a communication is published in the course of a judicial proceeding, so as to obtain the benefit of the absolute privilege, is a question of law for the court to decide, and our review is, therefore, plenary. See *Bleich* v. *Ortiz*, 196 Conn. 498, 501, 493 A.2d 236 (1985); *Ely* v. *Mason*, 97 Conn. 38, 43, 115 A. 479 (1921); 3 Restatement (Second), supra, § 619, p. 316.[6]

Section 586 of the Restatement (Second) of Torts provides: "An attorney at law is absolutely privileged

[6] We note that some of our trial courts have treated the issue of whether a communication was published in the course of a judicial proceeding as a question of fact. See *Wilkinson* v. *Schoenhorn*, Superior Court, judicial district of Hartford, Docket No. 565559 (March 24, 1999). We take this opportunity to clarify that "[w]hether a defamatory communication implicates an interest worthy of protection is a question of law . . . ." *Bleich* v. *Ortiz*, supra, 196 Conn. 501. It is, therefore, the courts' duty to determine, on the basis of the underlying facts, whether a particular communication was published in the course of a judicial proceeding so that the benefit of the absolute privilege applies.

to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." "The privilege . . . is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it. . . ." 3 Restatement (Second), supra, § 586, comment (c). "The privilege . . . is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. . . ." Id., § 586, comment (a).

The judicial proceedings privilege "extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is pertinent to the controversy. . . . Thus it applies to statements made in pleadings or other documents prepared in connection with a court proceeding." (Citation omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 251–52. "It is not absolutely essential, [however] in order to obtain the benefits of absolute privilege, that the language claimed to be defamatory be spoken in open court or contained in a pleading, brief, or affidavit." (Internal quotation marks omitted.) *Romero* v. *Prince*, 85 N.M. 474, 477, 513 P.2d 717 (1973); *Zirn* v. *Cullom*, 187 Misc. 241, 243, 63 N.Y.S.2d 439 (1946); see also *Kelley* v. *Bonney*, supra, 221 Conn. 572–74 (defendant's communication to alleged potential witness held absolutely immune because communication aimed at marshaling evidence against plaintiff); *Hawkins* v. *Harris*, 141 N.J. 207, 216–17, 661 A.2d 284 (1995).

"In determining whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the

matter is published. . . . The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged." (Citation omitted; internal quotation marks omitted.) *Kelley* v. *Bonney*, supra, 221 Conn. 575.

Although the appellate courts of this state have not had much opportunity to address the applicability of the judicial proceedings privilege to a defamatory communication under a circumstance similar to the one at issue in the present case, that is, to an attorney's out-of-court communication to an individual without a direct interest in the judicial proceeding, "[s]everal courts have recognized absolute immunity for publication to an individual or organization without a direct interest in the relevant proceedings where the recipient nonetheless had some interest in the proceeding. . . . The cases which have considered similar out-of-court communications to a third party have required that the recipient have an interest in or connection to the judicial proceeding and that the attorney's communication have a sufficient relationship to the subject matter of the proceeding. See generally Annot., 23 A.L.R.4th 932 (1983)." (Citations omitted.) *Penny* v. *Sherman*, 101 N.M. 517, 520, 684 P.2d 1182, cert. denied, 101 N.M. 555, 685 P.2d 963 (1984).

In *Riccobene* v. *Scales*, 19 F. Sup. 2d 577, 579 (N.D. W. Va. 1998), the defendant attorney represented the plaintiff's former wife in domestic violence and divorce actions against the plaintiff, a sergeant first class in the United States Army.[7] At the former wife's request, the defendant attorney sent a letter to the plaintiff's superior officer. Id., 580. The purpose of the letter was to obtain the military's help in stopping the plaintiff from

---

[7] The law firm for which the attorney worked also was named as a defendant in the action. For our purposes, we refer only to counsel for the former wife as the defendant.

abusing and harassing his former wife. Id. In response, the plaintiff filed an ethics complaint against the attorney with the West Virginia bar. Id. The attorney responded to the plaintiff's ethics complaint by sending a letter to the state bar. Id. The attorney also sent a copy of the letter with attachments, including her affidavit addressing the allegations in the ethics complaint, to the plaintiff's superior officer because the plaintiff's former wife had informed the attorney that the plaintiff continued to abuse and harass her, and that she feared for her physical safety. Id.

Thereafter, the plaintiff brought an action against the attorney, advancing several theories, each of which was predicated on allegations of defamation that arose from the attorney's transmission of the two letters to the plaintiff's superior officer. Id., 581.

The United States District Court for the Northern District of West Virginia held that the attorney's two items of correspondence to the plaintiff's superior officer were absolutely privileged. Id., 583. Although an order had been entered in the divorce action and two domestic violence protective orders had been entered, the court found that the correspondence to the plaintiff's superior officer had been published during the course of, and as part of, the domestic violence proceeding in which the attorney had participated as counsel. Id., 582–83. The court explained that the publications to the plaintiff's superior officer arose from the attorney's representation of the plaintiff's former wife in the domestic violence action and were directly related to the attorney's efforts to stop the plaintiff's abuse of his former wife, which apparently had continued despite the protective orders. Id., 583.

Although the court noted that publication to a person with a direct interest in the judicial proceeding is not an independent element in the absolute privilege analy-

sis, the court nevertheless found "that the United States Army had a clear and direct interest in receiving reports of alleged spousal or child abuse committed by its soldiers." Id., 584. The court stated that "[a]t the time of [the defendant's] contacts with the plaintiff's superior officer, the United States Army had in effect a formal policy designed to both stop and prevent domestic violence." Id. It therefore concluded that "the United States Army had a clear and express interest in receiving reports of domestic violence allegedly committed by its soldiers." Id.

In *Penny* v. *Sherman*, supra, 101 N.M. 519, the defendant, an attorney, represented the decedent's estate. Shortly after the decedent's death, the decedent's beneficiaries had met with the plaintiff, an employee of the Deming Senior Citizens Center (senior center), who had been identified to them as a friend of the decedent and who the decedent had known through the senior center. Id. The plaintiff allegedly had agreed to sell certain items of the decedent's personal property and to account for the proceeds. Id. Concerned that the plaintiff had not accounted for the property she had agreed to sell, the beneficiaries requested that the defendant contact the plaintiff and demand the return of the decedent's property or its value. Id. After being forwarded the plaintiff's unsatisfactory response to the defendant's demand letter, the beneficiaries requested that the defendant contact the senior center in an effort to collect the property or the money from its sale and to advise the senior center of the beneficiaries' problems with the plaintiff. Id. The defendant communicated with the director of the senior center regarding the dispute between the plaintiff and the estate. Id. The defendant, at the director's request, also sent the director a copy of the demand letter. Id. The plaintiff's libel action was based on the defendant's publication of the demand letter to the director. Id.

The Court of Appeals of New Mexico held that the defendant's letter was absolutely privileged. Id., 521. The court, contrary to the plaintiff's argument, stated that "[p]ublication to a person with a direct interest in the judicial proceeding is not an independent element in the absolute privilege analysis. The direct interest of the recipient is one factor in the analysis of whether a publication has such a relation to a judicial proceeding that the absolute privilege applies." Id., 520. The court stated that its decision in *Romero* v. *Prince,* supra, 85 N.M. 474, which relied on the Restatement of Torts § 586 (1938), "stands for the proposition that any letter from an attorney that is reasonably related to an ongoing or contemplated judicial proceeding is absolutely privileged." *Penny* v. *Sherman,* supra, 101 N.M. 520. In determining that the defendant's letter was absolutely privileged, the court held that "[b]y its terms, the letter was a communication during the course of the probate of the estate designed to achieve the interests of [the defendant's] clients. It was a demand letter written on behalf of the personal representative in an effort to accomplish his legal obligation to collect the estate assets. . . . The substance of the letter related to the ongoing probate proceedings and to a potential suit related to those proceedings." (Citation omitted.) Id., 520–21.

In addressing the issue of the senior center's interest in the probate proceeding, the court determined that there were sufficient allegations in the various affidavits to provide a basis for the senior center's interest in the proceeding. Id., 521. The court stated, inter alia, that the decedent was a "client" of the senior center, that the plaintiff had become acquainted with the decedent through it, that the affidavits indicated that the senior center had some public responsibility for the affairs of senior citizens and that the beneficiaries perceived the plaintiff's dealings with them as related to her job at

the senior center. Id. The court concluded that those allegations provided a sufficient basis for its determination that it was reasonable for the personal representative to contact the senior center about the dispute. Id. The court concluded that "[p]ublication of the letter to . . . the director of the [senior center] was reasonably related to the ongoing judicial proceeding and, consequently, was absolutely privileged." Id.

Although we do not today attempt to define the scope of the judicial proceedings privilege, we do conclude that under the circumstances of this case, the letter at issue was published in the course of and as a part of the Probate Court proceeding concerning the appointment of a permanent conservator for Christopher McManus. As in *Riccobene* and *Penny*, the publication of the defendant's letter to Barber arose from his representation of Christopher McManus in the Probate Court proceeding and directly related to the defendant's efforts to represent his client's interests in that proceeding by stopping or exposing the plaintiff's alleged misconduct.

The letter at issue specifically references the pending Probate Court proceeding and identifies the defendant as the attorney for Christopher McManus. By its own terms, the purpose of the letter was "to seek immediate assistance in connection with a [P]robate [C]ourt hearing for the appointment of a permanent conservator of [Christopher McManus'] person and his estate." The issues addressed in the letter pertain, inter alia, to the events and circumstances that led to the defendant's belief that the plaintiff may have improperly used her position with the department to violate Christopher McManus' rights and to engage in some impropriety with regard to the Probate Court proceeding.

Although it is true that Barber did not have a direct interest in the Probate Court proceeding, and that "[t]he

privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged";[8] (internal quotation marks omitted) *Kelley* v. *Bonney*, supra, 221 Conn. 575; we do not think that the publication to Barber was unreasonable. Barber, as an assistant attorney general, represents the state and its agencies, including the department. See General Statutes § 3-125. Although technically the attorney general's office may not be the correct office with which to file a complaint, if there is a potential problem with a department employee, the attorney general does provide legal representation to state agencies, including the department,[9] and it was not unreasonable for the defendant to publish to that office a letter alleging that a department employee may have improperly used her employment to advance her personal interest in a court proceeding. This is not a case in which the defendant published defamatory matter to the media or to some other party that had no interest in the litigation. The letter was published to Barber, a legal representative of the department, who forwarded the letter to the department for investigation. The department has an interest in knowing if one of its social workers is using her position improperly to influence a court proceeding. Similarly, the department has an interest in a judicial proceeding if one of its employees is using her position improperly to influence that proceeding. We, therefore, conclude that the office of the attorney general had, as legal representative for the department, an interest in the Probate Court proceeding at issue in the present case.

---

[8] Thus, "[p]ublication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." (Internal quotation marks omitted.) *Kelley* v. *Bonney*, supra, 221 Conn. 576.

[9] See, e.g., *Szewczyk* v. *Dept. of Social Services*, 77 Conn. App. 38, 822 A.2d 957 (2003) (attorney general's office represented department); *Commissioner of Social Services* v. *Syed*, 74 Conn. App. 190, 810 A.2d 846 (2002) (same).

For the foregoing reasons, we conclude that the statements contained in the defendant's letter were absolutely privileged because the letter was published in the course of and as part of a Probate Court proceeding regarding the appointment of a permanent conservator for Christopher McManus. Our holding is consistent with the purpose of the absolute privilege, which is "based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. . . ." 3 Restatement (Second), supra, § 586, comment (a), p. 247.

The judgment is affirmed.

In this opinion the other judges concurred.