# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-015

Filing Date: January 25, 2021

No. A-1-CA-36745

JOANN CHAVEZ-NEAL,

      Plaintiff-Appellee,

v.

SHANNON L. KENNEDY
and KENNEDY KENNEDY
& IVES, LLC,

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

Released for Publication May 11, 2021.

Chavez Law Firm
Enrique Chavez, Jr.
El Paso, TX

for Appellee

Kennedy Kennedy & Ives, LLC
Adam C. Flores
Joseph P. Kennedy
Albuquerque, NM

for Appellant Shannon L. Kennedy

Almanzar & Youngers, P.A.
Joleen K. Youngers
Santa Fe, NM

for Appellant Kennedy Kennedy & Ives, LLC

## OPINION

**DUFFY, Judge.**

**{1}**    Plaintiff Joann Chavez-Neal sued Shannon Kennedy and her law firm, Kennedy Kennedy & Ives, LLC, (collectively, Defendants) for defamation, alleging that Kennedy made defamatory statements about Ms. Chavez-Neal during a television news interview. Defendants moved for summary judgment on the ground that the absolute privilege doctrine barred the lawsuit. After the district court denied Defendants' motion, this Court granted Defendants' petition for a writ of error pursuant to Rule 12-503 NMRA and we now reverse, holding that Kennedy's statements to the media about an ongoing judicial proceeding were absolutely privileged, thus entitling Defendants to immunity from suit for defamation.

## BACKGROUND

**{2}**    Defendants represented D.G., a young woman who had worked as an intern for the Las Cruces Police Department when she was seventeen years old. In April 2014, Defendants filed suit on behalf of D.G. against the City of Las Cruces and individual officers, alleging that a police department detective had raped D.G. while she was at work. The complaint included a count for municipal liability, which alleged that the rape resulted from "a sexualized culture" that existed within the police department. Defendants argued that the culture was one in which it was acceptable for officers to "engage in sexual harassment of women and girls" and that the police department failed to implement sexual harassment policies or otherwise address reports of sexual misconduct.

**{3}**    During the course of litigation, Defendants deposed Ms. Chavez-Neal, a detective with the Las Cruces Police Department. When attorney Joseph Kennedy asked Ms. Chavez-Neal about the "nature of the culture in law enforcement" regarding sexual harassment, she responded, "You have to keep up." Mr. Kennedy asked her what she meant by that and the following exchange took place:

> A:    You have to be able to joke with—the same as they do. You have to be able to put up with certain things that you wouldn't necessarily put up with otherwise.
>
> Q.    All right.
>
> A.    You have to be bigger, better, faster, stronger, or you're seen as inferior and weak, and you get talked about, you get belittled. It's humiliating.
>
> Q:    Are there any specific examples you can give me of that, or is that just a general sense you get when you talk about the culture of the employment?
>
> A:    I know women in the department have been called names. I've been personally called names, had things written on sign-up

sheets, put in your mailbox, rumors spread about you to different agencies, things of that nature.

Q:     Okay. What types of names have you been called personally?

A:     My call sign is 704. I have been referred to as "7-0-whore."

**{4}**     The City of Las Cruces eventually moved for summary judgment on the municipal liability claim. Defendants' response discussed the sexually charged atmosphere in the department and noted that "male officers also gave female officers sexualized nick-names." Citing to Ms. Chavez-Neal's deposition testimony, Defendants wrote, "For example, Ms. Chavez[-Neal]'s call number is 704, but she has been referred to as '7-0-whore[.]' " Defendants attached portions of Ms. Chavez-Neal's deposition transcript as an exhibit to the filing.

**{5}**     In January 2016, while D.G.'s lawsuit was still pending, the television station KOB-TV, LLC (KOB) aired a five-minute story about the case. Defendant Shannon Kennedy agreed to be interviewed and the KOB story broadcasted four of her statements:

Had there been a leader at the police department that had said we do not tolerate this kind of behavior, [D.G.] would not have been raped.

[D.G.] was subjected to inappropriate comments, like they called her mother a MILF, and she overheard the male sex crimes detectives including Garcia call women 'sucia' in the workplace.

And so there's a continuum of sexual assault that starts with sexual harassment by degrading women and dehumanizing women, by calling them whores [and other derogatory names].

And he thought the guys would understand and that he could minimize what he had done to [D.G.] by just degrading women as he did on a daily basis while being a detective.

These statements are the entirety of Kennedy's televised comments.[1]

---

1The KOB story also included a voiceover in between Kennedy's second and third comments where the *reporter* stated:

A number of detectives described the workplace banter in recorded interviews with attorneys. . . . During these interviews, detectives revealed a female officer whose call number is 704 was commonly referred to as "7-0-whore." A woman with the initials of V.D. was routinely called VD as in "venereal disease." Male detectives were seen grabbing their penises in front of female secretaries asking to be touched. And a woman the male detectives considered to be unshapely was routinely referred to as "Sponge Bob."

**{6}** In December 2016, Ms. Chavez-Neal sued Defendants, alleging a single count of defamation related to the news interview.[2] In her complaint, Ms. Chavez-Neal asserted that during the interview with KOB, Kennedy had identified her as being " 'commonly referred to as 7-0-whore' because her call number is '704.' " Ms. Chavez-Neal also alleged that Kennedy referred to Ms. Chavez-Neal as a "whore" to the public. These statements, Ms. Chavez-Neal claimed, caused damage to her reputation and credibility because they implied that she, a married woman, is sexually promiscuous and had engaged in sexual misconduct.

**{7}** Defendants filed a motion for summary judgment concurrently with their answer and asserted that Kennedy's statements were absolutely privileged, thus precluding the lawsuit as a matter of law. During the hearing, Defendants played a video of the full five-minute news story for the court and noted that Kennedy had not made the statements alleged in Ms. Chavez-Neal's complaint. The district court nevertheless denied the motion, stating that if the statements "had simply remained as part of a pleading filed with the court, I believe the privilege would apply, but because it comes up in the context of a TV broadcast interview, my reading of *Helena Chemical* [*Co. v.*] *Uribe*[,2012-NMSC-021, 281 P.3d 237,] is that there is no absolute privilege when it comes up as part of an interview or media interview." The district court further stated that if "Ms. Kennedy [were] simply quoting from a pleading, the privilege might apply. But from my review of the transcript and now watching the video, Ms. Kennedy is not careful enough to couch it in those terms. She appears to be republishing the statements. So the absolute privilege of litigation would not apply." The district court also denied Defendants' request to include interlocutory language in the order.

## DISCUSSION

**{8}** Because the absolute privilege doctrine "grants immunity to litigants and their attorneys from being sued for defamation," *Helena Chem. Co.*, 2012-NMSC-021, ¶ 1, we granted Defendants' petition for writ of error. *See Campos de Suenos, Ltd. v. Cnty. of Bernalillo*, 2001-NMCA-043, ¶ 15, 130 N.M. 563, 28 P.3d 1104 ("We issue writs of error to review immunity from suit cases because we consider them collateral orders affecting interests that would be irretrievably lost if the case proceeded to trial." (alteration, internal quotation marks, and citation omitted)). "We review motions for summary judgment and the question of whether a privilege exists de novo." *Helena Chem. Co.*, 2012-NMSC-021, ¶ 11.

---

Throughout the voiceover, at the top of the screen, the story cited "Court docs[.]" KOB represented that it obtained this information from documents filed in the underlying court proceedings.

2Ms. Chavez-Neal also named KOB as a Defendant. KOB filed a motion for summary judgment, arguing that the defamation claim should fail because it was based on statements that were both true and privileged. The district court granted KOB's motion, stating that it "determined that the absolute fair report privilege is applicable to KOB[], and determin[ed] that KOB's broadcast was based upon documents filed in the United States District Court, for the District of New Mexico[.]" *See Stover v. Journal Pub. Co.*, 1985-NMCA-113, ¶ 14, 105 N.M. 291, 731 P.2d 1335 (stating that the "essence of the fair report privilege is that no liability will attach for the republication of the defamatory statements so long as the republication is a fair and accurate report of an official or public proceeding").

**{9}** This Court has long recognized that "defamatory matter in judicial pleadings, even if false and malicious, is absolutely privileged" as long as the defamatory matter is "reasonably related to the subject of inquiry." *Stryker v. Barbers Super Mkts., Inc.*, 1969-NMCA-119, ¶ 13, 81 N.M. 44, 462 P.2d 629. Following our holding in *Stryker*, we adopted the approach set forth in Restatement (First) of Torts § 586 (1938) (current version at Restatement (Second) of Torts § 586 (1977)), which states:

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he [or she] participates as counsel, if it has some relation thereto.

*See Romero v. Prince*, 1973-NMCA-122, ¶ 12, 85 N.M. 474, 513 P.2d 717. The doctrine "is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Penny v. Sherman*, 1984-NMCA-073, ¶ 13, 101 N.M. 517, 684 P.2d 1182.

**{10}** Although "[t]he *Romero* [C]ourt summarized the absolute privilege doctrine to mean that a defamatory statement of an attorney is absolutely privileged if the statement is made during the course of and as a part of judicial proceedings and is related to those proceedings[,]" it also "clarified that the privilege applies even when the statement is not spoken in open court or contained within a court pleading." *Helena Chem. Co.*, 2012-NMSC-021, ¶ 13 (internal quotation marks and citation omitted) (noting that *Romero* applied the privilege to a lawyer's settlement letter and explaining that "if the out-of-court statement is made to achieve the objects of the litigation, the statement is related to the judicial proceeding").

**{11}** Our Supreme Court confronted the scope of extrajudicial statements in *Helena Chemical Co.*, addressing the very situation presented in this appeal—statements to the media after a complaint is filed. 2012-NMSC-021, ¶¶ 28-35. Recognizing that "[a] complaint filed in court is absolutely privileged[,]" the Court held that "statements made by litigants or their attorneys to the press after the lawsuit has been filed are absolutely privileged if the statements are a repetition or an explanation of the allegations in the pleading." *Id.* ¶¶ 2, 30. The Court reasoned that

> republishing, repeating, or explaining a complaint that has been filed in good faith should be absolutely privileged because in the age of digital communication, it is illogical to protect allegations in a publicly filed complaint but not repetition or explanation of those same allegations outside the courthouse. Allegations of interest to the public or even to a single competitive industry will inevitably reach interested parties, and an explanation limited to the scope of the complaint only narrows the potential harm of statements that would be defamatory but for the privilege.

*Id.* ¶ 30 (alteration, internal quotation marks, and citation omitted).

**{12}** Whether the absolute privilege doctrine applies is determined on a case-by-case basis. *Id.* ¶ 16. "The question of the relationship between the alleged defamatory matter and the proposed or existing judicial proceeding is a question of law." *Penny*, 1984-NMCA-073, ¶ 14. "All doubt should be resolved in favor of recognizing the privilege." *Id.* ¶ 13. "Only in extreme cases will a publication made in connection with a judicial proceeding serve as the basis for a defamation action." *Id.*

**{13}** In this case, the twenty-page complaint filed by Defendants in the underlying civil lawsuit against the City of Las Cruces included numerous allegations describing a "pervasive atmosphere of sexual harassment and abuse . . . within the police department." The complaint alleged that "[i]n practice, the City of Las Cruces has cultivated and encouraged a sexualized culture within its police department which has created an acceptance and expectation that law enforcement officers will engage in sexual harassment of women and girls." The complaint further alleged that "[t]he objectification and dehumanization of women has caused Las Cruces police officers to engage in sexual harassment, sexual batteries, and sexual misconduct while on duty" and that "[t]he City of Las Cruces' silence on sexual misconduct within the police department has promoted the sexualized environment and normalized sexual harassment." The normalization of this "sexualized culture," the complaint alleged, "created a policy and practice [that] encourages officers to sexually exploit women while acting within the course and scope of their duty as officers."

**{14}** Kennedy's statements in the interview all related to these allegations in the complaint. She stated that "[t]here's a continuum of sexual assault that starts with sexual harassment by degrading women and dehumanizing women, by calling them whores [and other derogatory names]." She further explained that her client was subjected to a number of inappropriate comments and but for the sexualized culture and the police department's tolerance of it, her client "would not have been raped." Although Kennedy did not repeat the allegations of the complaint verbatim during the interview, her statements clearly echoed the claims at issue and explained, by way of specific, limited examples, the allegations of harassment, objectification, and dehumanization underlying the municipal liability claim. These statements are analogous in scope to the statements at issue in *Helena Chemical Co.*, and because they were similarly limited to reiteration and explanation of the allegations of the complaint, we conclude that the absolute privilege doctrine applies. *See* 2012-NMSC-021, ¶ 32 (holding that a party's statements describing her children's medical condition were "an explanation of the damages portion of the complaint" such that the absolute privilege applied).

**{15}** Although Ms. Chavez-Neal essentially conceded as much during the proceeding below, writing in her response to Defendants' motion for summary judgment that "it is true that [Kennedy's] statements to KOB[] generally are an explanation of the allegations of the suit against the City of Las Cruces," she continues to allege, incorrectly, that Kennedy specifically referred to Ms. Chavez-Neal during the KOB interview by her call number and republished the phrase "7-0-whore." Because the

content of Kennedy's statements is a matter of record and not subject to dispute, we reject Ms. Chavez-Neal's contentions. In the record before us, Defendants' only republication of Ms. Chavez-Neal's deposition testimony occurred as part of a written response filed in ongoing litigation. Defendants were privileged to republish Ms. Chavez-Neal's testimony within the confines of those proceedings. *See, e.g., Superior Constr., Inc. v. Linnerooth*, 1986-NMSC-008, ¶ 8, 103 N.M. 716, 712 P.2d 1378 (acknowledging that "[w]ith few exceptions, any publication made in a judicial proceeding enjoys absolute privilege from later charges of defamation").

**CONCLUSION**

**{16}** We hold that the statements at issue in this case are absolutely privileged and therefore reverse and remand with instructions to enter summary judgment in favor of Defendants.

**{17} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**JANE B. YOHALEM, Judge**