******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SAIFULLAH KHAN *v.* JEWISH WOMEN INTERNATIONAL ET AL.
## (AC 48383)

Suarez, Clark and Harper, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dismissing his action for, inter alia, defamation. While he was a student at Yale University, the plaintiff was accused of rape by J, a fellow student. The plaintiff was charged with, tried, and acquitted of sexual assault in the Superior Court, but, in subsequent disciplinary proceedings at Yale, Yale expelled the plaintiff for violating its sexual misconduct policy. The plaintiff subsequently brought an action in the United States District Court against J for defamation and tortious interference with business relationships. The United States Court of Appeals for the Second Circuit ultimately certified questions of Connecticut state law concerning absolute immunity to the Connecticut Supreme Court, and the defendants in the present case filed an application with the Supreme Court to appear as amici curiae. In their attached proposed amicus brief, the defendants stated that the plaintiff had raped J and referred to the plaintiff as J's rapist. The plaintiff then instituted the present action, alleging, inter alia, that the defendants' statements constituted defamation. On appeal to this court, the plaintiff claimed, inter alia, that the trial court improperly addressed the defendants' special motions to dismiss pursuant to the anti-SLAPP statute (§ 52-196a) after concluding that it lacked subject matter jurisdiction over the action. *Held*:

The trial court properly concluded that the litigation privilege applied to persons seeking to appear as amici curiae, as the privilege protects all participants in a judicial proceeding and applies to every step of the proceeding until its final disposition, including statements made in pleadings or other documents prepared in connection with the proceeding.

The trial court did not err in concluding that the statements in the proposed amicus brief were pertinent to the certified question before the Supreme Court for purposes of the litigation privilege, as J's allegation that the plaintiff raped her and Yale's decision to expel the plaintiff on the basis of her allegation were central to the issues both in the underlying federal litigation and in the proceedings before the Supreme Court, and, because the defendants' statements referring to the plaintiff as a rapist mirrored J's allegation, they unquestionably had some reference to the issues before the court.

The trial court did not err in determining that the count of the plaintiff's complaint purporting to assert a claim for abuse of process was barred by the litigation privilege, as the plaintiff failed to identify specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation and, instead, based his claim entirely on the allegation that the words used by the defendants caused him harm in a way that was ancillary to the litigation.

This court concluded that the trial court did not err in dismissing the portion of the plaintiff's claims pertaining to the defendants' alleged republication of the proposed amicus brief on the alternative ground that, pursuant to *Kelley* v. *Bonney* (221 Conn. 549), the litigation privilege barred those claims, as the proposed amicus brief was a publicly filed court record that remained accessible to the general public.

The trial court improperly addressed the special motions to dismiss after concluding that it lacked subject matter jurisdiction over the action, as once the court determined that the litigation privilege barred the plaintiff's claims, it was required to dismiss the action without proceeding further.

Argued December 3, 2025—officially released June 30, 2026

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. Carl J. Schuman*, judge trial referee, granted the motions to dismiss and the special motions to dismiss filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court; thereafter, the plaintiff withdrew his appeal as against the defendant Advocates for Youth. *Vacated in part*; *judgment directed*.

*Alexander T. Taubes*, for the appellant (plaintiff).

*Amanda S. Amert*, pro hac vice, with whom were *Sara Kim*, pro hac vice, and *Karen T. Staib* and, on the brief, *Nicole Lapenta* and *Joseph Mario Buccilli*, pro hac vice, for the appellees (named defendant et al.).

*Joel Kurtzberg*, pro hac vice, with whom were *Lauren Perlgut*, pro hac vice, and, on the brief, *David G. Januszewski*, for the appellee (defendant Sanctuary for Families, Inc.).

*Sharon Baldwin*, for the appellee (defendant Advocates for Youth).

*Scott M. Harrington*, for the appellee (defendant The Fierberg National Law Group, PLLC).

*Opinion*

CLARK, J.  This appeal concerns the applicability of the litigation privilege, which provides litigation participants absolute immunity from suit, to persons participating in litigation as amici curiae.  The plaintiff, Saifullah Khan, brought this action against the defendants, twelve nonprofit organizations (nonprofit defendants),[1] The Fierberg National Law Group, PLLC (Fierberg), and Attorney Jennifer M. Becker, claiming that the defendants falsely referred to him as a "rapist" in a proposed brief they filed with an application to appear as amici curiae in a proceeding before our Supreme Court. The trial court dismissed the action as to all defendants except Sanctuary for Families (Sanctuary) for lack of subject matter jurisdiction on the ground that the plaintiff's claims were barred by the litigation privilege.[2] The court also dismissed the action as to all defendants pursuant to the anti-SLAPP statute, General Statutes § 52-196a, on the ground that the complaint is based on the defendants' exercise of their right to petition the government and that the plaintiff could not prevail on the merits because the litigation privilege bars his claims.

On appeal, the plaintiff claims that the court improperly (1) concluded that the defendants were entitled to absolute immunity for their statements in the proposed

[1]The nonprofit defendants are: Jewish Women International; Legal Momentum; Chicago Alliance Against Sexual Exploitation; Connecticut Coalition Against Domestic Violence, Inc.; Futures Without Violence; National Alliance to End Sexual Violence; National Crime Victim Law Institute; National Network to End Domestic Violence, Inc.; National Women's Law Center; Network for Victim Recovery of the District of Columbia; Sanctuary for Families, Inc.; and Women's Law Project. The plaintiff also named National Coalition Against Domestic Violence as a defendant in his complaint, but it did not appear before the trial court and is not participating in this appeal. The plaintiff withdrew his appeal as to one additional defendant, Advocates for Youth, after oral argument before this court. Accordingly, all references in this opinion to the defendants include only the nonprofit defendants, The Fierberg National Law Group, PLLC, and Attorney Jennifer M. Becker.

[2]As discussed subsequently in this opinion, Sanctuary is the only defendant that did not file or join a motion to dismiss for lack of subject matter jurisdiction.  See part IV of this opinion.

amicus brief, **(2)** concluded that the litigation privilege barred his abuse of process claim, **(3)** concluded that the defendants' alleged republication of the proposed brief was protected by the fair report privilege, and **(4)** addressed the defendants' special motions to dismiss after concluding that it lacked subject matter jurisdiction over the action.[3]  We conclude that the court erred in addressing the special motions to dismiss after concluding that the plaintiff's action was barred by the litigation privilege.  We otherwise affirm the judgment of the trial court.

The following facts, as alleged in the complaint or as established by uncontested evidence in the record; see *Derblom* v. *Archdiocese of Hartford*, 203 Conn. App. 197, 200, 247 A.3d 600 (2021), aff'd, 346 Conn. 333, 289 A.3d 1187 (2023); and procedural history are relevant to this appeal.  The plaintiff is a former student at Yale University (Yale). After being accused of rape by a fellow student, the plaintiff was charged with, tried, and acquitted of sexual assault.[4]  Yale subsequently held a disciplinary proceeding relating to the allegations and, as a result of that proceeding, expelled the plaintiff for violating its sexual misconduct policy.

Thereafter, the plaintiff brought an action in the United States District Court for the District of Connecticut against his accuser, identified as Jane Doe, for

---

[3]The plaintiff also challenges the court's dismissal of the action pursuant to § 52-196a on the basis that **(1)** the court improperly concluded that he failed to establish probable cause that he would prevail on his claims, and **(2)** deprived him of his right to due process by denying his request for discovery pertaining to the defendants' anti-SLAPP motions. Because we conclude that the court lacked authority to address the special motions to dismiss in the first instance, we need not address these claims.

[4]As the trial court noted, although the plaintiff alleged in his complaint that he was acquitted of "rape" and does not identify the jurisdiction in which his trial took place, it is undisputed that the trial took place in the Superior Court and that the plaintiff was charged with and acquitted of sexual assault. See *Khan* v. *Yale University*, 347 Conn. 1, 13, 295 A.3d 855 (2023) ("[the plaintiff] faced trial before a jury in early 2018 for first, second, third, and [fourth degree] sexual assault during a nearly [two week] trial and was acquitted on all counts after less than [one] day of deliberations" (internal quotation marks omitted)).

defamation and tortious interference with business relationships. See *Khan* v. *Yale University*, 347 Conn. 1, 16, 295 A.3d 855 (2023).[5] The District Court dismissed the plaintiff's claims against Doe, concluding that the Yale disciplinary proceeding was quasi-judicial in nature and that Doe enjoyed absolute immunity for her statements in that proceeding. Id. The plaintiff appealed to the United States Court of Appeals for the Second Circuit, claiming "that the proceedings of [nongovernmental] entities cannot be quasi-judicial and, thus, Doe's accusations of sexual assault in a private university's disciplinary hearing are not shielded by absolute immunity." (Internal quotation marks omitted.) Id., 17. The Second Circuit, concluding that the outcome of the appeal hinged on questions of Connecticut state law concerning absolute immunity, certified those questions to our Supreme Court pursuant to General Statutes § 51-199b (d). See id., 17–18.

The nonprofit defendants and Fierberg, represented by Becker, filed an application for permission to appear as amici curiae and to file a brief in support of Doe and attached a copy of their proposed brief to their application. The argument section of the proposed brief opened by stating: "When Jane Doe was in college, the plaintiff raped her." The brief also referred to the plaintiff as "[Jane Doe's] rapist," stated that "Jane Doe was raped," and referred to Doe as a "victim." The plaintiff objected to the defendants' application on the basis that the statements referring to him as a rapist were "a false and vicious personal attack" that constituted an "abuse of . . . the litigation privilege," which the plaintiff asserted "bar[red] [him] from suing [the defendants].'"[6]

---

[5]The plaintiff also brought claims against Yale and various Yale employees, but those claims were not at issue in the proceedings before our Supreme Court. See *Khan* v. *Yale University*, supra, 347 Conn. 11 n.8.

[6]We take judicial notice of the relevant filings in the Supreme Court in *Khan* v. *Yale University*, supra, 347 Conn. 1. See, e.g., *Jackson* v. *Drury*, 191 Conn. App. 587, 590 n.4, 216 A.3d 768 ("[a]n appellate court may take judicial notice of files in the same or other cases"), cert. denied, 333 Conn. 938, 218 A.3d 1050 (2019); *Norris* v. *Trumbull*, 187

The defendants filed an application for permission to file a reply to the plaintiff's objection to explain why they believed their statements were supported by the record and, in the alternative, requested permission to file a revised brief without the challenged language. The Supreme Court denied the defendants' application for permission to file an amicus brief "without prejudice to refiling the application . . . accompanied by a proposed brief that is shorn of all facts not supported by the record . . . ." The defendants filed a renewed application accompanied by a proposed brief without the challenged language, which the Supreme Court granted. The initial proposed brief, however, remains publicly available on the Judicial Branch website, and the plaintiff alleges that the defendants republished the brief on their websites and "to donors."

The plaintiff commenced the present action on May 21, 2024, alleging, against all defendants, claims sounding in defamation, false light, negligent infliction of emotional distress, and abuse of process. All of the defendants except Sanctuary filed motions to dismiss for lack of subject matter jurisdiction, asserting that the litigation privilege bars the plaintiff's claims because they arise from the challenged statements in the proposed amicus brief. Additionally, all defendants, including Sanctuary, filed special motions to dismiss pursuant to § 52-196a, asserting that the plaintiff's claims are based on the defendants' exercise of their rights to free speech and to petition the government pertaining to a matter of public concern and that the plaintiff could not establish probable cause that he would prevail on the merits of his claims because, inter alia, the litigation privilege bars those claims.[7]

Conn. App. 201, 211, 201 A.3d 1137 (2019) ("in conducting our de novo review [of a trial court's decision granting a motion to dismiss], we limit ourselves to the factual record as it existed before the trial court, supplemented by any additional records of which we may take judicial notice").

[7] As our Supreme Court has explained, "[u]nder [§ 52-196a] a party may file a special motion to dismiss when the opposing party's complaint is based on the moving party's exercise of, among other things, the right

On November 8, 2024, the plaintiff filed an omnibus memorandum in opposition to the defendants' motions to dismiss and special motions to dismiss.[8] The plaintiff argued that the defendants did not enjoy absolute immunity for the statements in the proposed amicus brief because (1) the litigation privilege does not apply

of free speech or the right to petition the government in connection with a matter of public concern." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022). A claim is subject to dismissal pursuant to § 52-196a if the party filing the special motion to dismiss demonstrates that the complaint "is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the [c]onstitution of the United States or the [c]onstitution of the state in connection with a matter of public concern," and the nonmoving party fails to "[demonstrate] to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint . . . ." General Statutes § 52-196a (e) (3).

In their special motions to dismiss, the defendants also raised other arguments in support of their contention that the plaintiff could not meet his burden under the second prong of § 52-196a (e) (3) to establish probable cause that he would prevail on the merits. On appeal, the defendants renew those arguments as alternative grounds to affirm the trial court's decision granting the special motions to dismiss. We need not address those arguments because, as explained subsequently in this opinion, we conclude that the court should have dismissed the action for lack of subject matter jurisdiction as to all defendants and should not have addressed the special motions to dismiss.

[8]Before filing his memorandum in opposition to the defendants' motions to dismiss and special motions to dismiss, on September 4, 2024, the plaintiff filed a motion for permission to take limited discovery of Sanctuary for the purpose of responding to its special motion to dismiss. See General Statutes § 52-196a (d). On October 7, 2024, the court granted the plaintiff's motion in part. The plaintiff, however, filed his omnibus memorandum in opposition to the defendants' motions to dismiss and special motions to dismiss before taking the deposition of a representative of Sanctuary. The court, therefore, decided the matter as to Sanctuary on the basis of the briefing and affidavits.

In his omnibus opposition to the defendants' motions to dismiss and special motions to dismiss, the plaintiff, for the first time, requested permission to take discovery of the remaining defendants. In its memorandum of decision, the court denied that request on the basis that the plaintiff did not establish good cause that such discovery was warranted. As stated previously; see footnote 3 of this opinion; although the plaintiff challenges the court's discovery rulings on appeal, in light of our conclusion that the court lacked authority to address the merits of the special motions to dismiss, we need not address the discovery related claims because they pertain only to the special motions to dismiss.

to persons seeking to appear as amici curiae, and (2) even if it does, the privilege did not apply under the facts of this case because the challenged statements were not pertinent to the appeal before the Supreme Court. In support of the latter argument, the plaintiff argued that the Supreme Court had "necessarily determined that the statements . . . were impertinent" to the issues in the appeal "[b]y ordering the defendants to refile their brief 'shorn of all facts not supported by the record.'" The plaintiff also argued that, even if the privilege did bar any claims that were based on the defendants' filing of the proposed brief, it did not bar his claims to the extent they are based on the defendants' alleged republication of the brief. Finally, the plaintiff argued that the litigation privilege did not bar count four of the complaint, which was styled as an abuse of process claim, because the defendants "misus[ed] the amicus process" by including the statements for an improper purpose, namely, "to defame the plaintiff, discourage him from maintaining his case, and generate publicity and fundraising for their organizations."

The court, *Hon. Carl J. Schuman*, judge trial referee, held a combined oral argument on the defendants' motions and special motions to dismiss on December 9, 2024. On January 9, 2025, the court issued a memorandum of decision dismissing the action against all defendants. Beginning with the motions to dismiss for lack of subject matter jurisdiction, the court first concluded that the litigation privilege applies to persons seeking to appear as amici curiae and that the statements in the proposed amicus brief were pertinent to the proceeding. The court also rejected the plaintiff's contention that, because count four of the complaint purportedly sounded in abuse of process, it is not barred by the litigation privilege. Although noting that the litigation privilege does not apply to well pleaded abuse of process claims, the court concluded that count four does not fall within that exception "because [it] does not properly allege an abuse of process action, but rather seeks redress solely for statements the defendants made during the litigation process . . . ."

The court also disagreed with the plaintiff's argument that the litigation privilege did not bar his claims to the extent they are based on the allegation that the defendants republished the proposed brief. Noting that the complaint alleges that the proposed brief remains available on the Judicial Branch website, the court concluded that the defendants' alleged republication of the brief was protected by the fair report privilege because it "would constitute a report of an 'official action or proceeding . . . .'"[9] The court further concluded that, "given the additional assistance of the fair report privilege, the defendants' republication of their amicus brief would not negate the applicability of the litigation privilege in this case." The court therefore granted the motion to dismiss for lack of subject matter jurisdiction. Despite the court's conclusion that it lacked subject matter jurisdiction over the action, the court went on to address, and grant, the special motions to dismiss.

The court thereafter rendered judgment dismissing the action, and the plaintiff timely filed the present appeal. Additional facts and procedural history will be set forth as necessary.

Before addressing the plaintiff's claims, we first set forth our standard of review and the general legal principles pertaining to the litigation privilege. The litigation privilege implicates the court's subject matter jurisdiction and, therefore, is properly raised by way of a motion to dismiss. See Practice Book § 10-30 (a) (1); *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 136, 314 A.3d 583 (2024). "Whether the litigation privilege applies in a given case is a question of law subject to de novo review." *Deutsche Bank AG* v. *Vik*, supra, 137.

---

[9]Under the fair report privilege, "publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." (Internal quotation marks omitted.) *Elder* v. *21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 422, 254 A.3d 344 (2021).

"The litigation privilege is a long-standing [common-law] rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) Id. The privilege "originated in response to the need to bar persons accused of crimes from suing their accusers for defamation," but has since "developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, parties, and witnesses." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 627, 79 A.3d 60 (2013). The privilege has also evolved from its common-law origins such that it now "extends to an array of retaliatory civil actions beyond claims of defamation, including intentional interference with contractual or beneficial relations arising from statements made during a civil action, intentional infliction of emotional distress arising from statements made during judicial proceedings, and fraud against attorneys or party opponents for their actions during litigation. . . . This expansion is premised on the rationale that, because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant." (Citations omitted; internal quotation marks omitted.) *Dorfman* v. *Smith*, 342 Conn. 582, 592, 271 A.3d 53 (2022).

I

The plaintiff first claims that the trial court improperly concluded that the defendants were entitled to absolute immunity for their statements in the proposed amicus brief. Specifically, he contends that the court improperly concluded that (1) the litigation privilege applies to persons seeking to appear as amici curiae in a judicial proceeding, and (2) the challenged statements referring to the plaintiff as a rapist were pertinent to the proceedings before the Supreme Court in *Khan* v. *Yale University*, supra, 347 Conn. 1. We disagree with both contentions.

## A

We first address the plaintiff's claim that the trial court improperly concluded that the litigation privilege applies to persons seeking to appear as amici curiae in a judicial proceeding. In its memorandum of decision, the trial court noted that "[t]he applicable rule" as set forth by our Supreme Court "is that the litigation privilege applies to *every step* of the proceeding until [its] final disposition . . . including to statements made in pleadings or other documents prepared in connection with [the] proceeding," and that it "bar[s] . . . claims against *all* participants in judicial proceedings, including judges, attorneys, parties, and witnesses . . . . *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137." (Emphasis in original; internal quotation marks omitted.) The trial court concluded that, "[u]nder this broad standard, amicus briefs surely qualify." The court explained that, because "[o]ur appellate rules of practice specifically provide for an application for permission to appear as amicus curiae and the filing of the actual amicus brief . . . amici are certainly participants in judicial proceedings . . . amicus briefs are very much a step in the proceeding . . . and statements made in those briefs are communications uttered or published in the course of judicial proceedings . . . all within the meaning of the litigation privilege." (Citations omitted; internal quotation marks omitted.) The court further concluded that "[t]he fact that the challenged statements appeared in an attachment to an application to appear as an amicus, rather than in the actual and final version of the amicus brief itself, does not negate this conclusion." As the court explained, "[t]he litigation privilege applies fully to documents prepared in connection with [a judicial] proceeding," and applications for permission to file a pleading accompanied by proposed pleadings "certainly constitute [steps] in the proceedings so that the litigation privilege attaches to statements made in them." (Internal quotation marks omitted.)

We agree with the trial court that the litigation privilege applies to persons seeking to appear as amici curiae

in a judicial proceeding. As the court recognized, the litigation privilege protects "*all participants* in judicial proceedings"; (emphasis added) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 627; and applies "to *every step* of the proceeding until [its] final disposition . . . including to statements made in pleadings or other documents prepared in connection with [the] proceeding." (Emphasis added; internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137; see also *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986). Practice Book § 67-7A expressly allows participation by amici and sets forth specific requirements that would-be amici must follow to obtain permission to file an amicus curiae brief. In order to obtain such permission, a person seeking to appear and file a brief as amicus curiae must file an application for permission that "state[s] concisely the nature of the applicant's interest and the reasons why a brief of an amicus curiae should be allowed." Practice Book § 67-7A (b). The proposed amicus brief that contains the challenged statements was attached to the defendants' application for permission that the defendants filed in accordance with § 67-7A. Thus, the defendants were participants in *Khan* v. *Yale University*, supra, 347 Conn. 1, in accordance with the rules governing that proceeding, and their application to appear was a step in the proceeding expressly required by the rules of practice.

Moreover, the policy concerns underlying the litigation privilege support extending the privilege to proposed amici. "The policy underlying the [litigation] privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation [or other retaliatory litigation]." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137–38. If attorneys were "hobbled by the fear of reprisal by actions for defamation . . . [it] may tend to lessen [counsel's]

efforts on behalf of clients." **(Internal quotation marks omitted.)** *Simms* v. *Seaman*, 308 Conn. 523, 535, 69 A.3d 880 (2013). Thus, the litigation privilege "protects the rights of clients who should not be imperiled by subjecting their legal advisors to the constant fear of lawsuits arising out of their conduct in the course of legal representation." **(Internal quotation marks omitted.)** Id. "Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit." **(Internal quotation marks omitted.)** *Chamerda* v. *Opie*, 185 Conn. App. 627, 641–42, 197 A.3d 982, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018).

These concerns apply equally to amici and their attorneys. Like judges, parties, and witnesses, persons participating as amici and the attorneys representing them should "do so with [their] mind[s] uninfluenced by the fear of an action for defamation or a prosecution for libel." **(Internal quotation marks omitted.)** *Simms* v. *Seaman*, supra, 308 Conn. 538. As the court explained in *Simms*, because questions concerning whether a statement is true and whether it was spoken with malice "are, and always will be . . . questions . . . upon which opinions may differ . . . which can only be resolved by the exercise of human judgment"; (internal quotation marks omitted) id.; even the threat of a retaliatory defamation action may cause would-be amici or their attorneys either to self-censor or to refrain from seeking to participate as amici curiae at all. See id., 538–39 (noting importance of providing litigation participants with absolute immunity "because of the simple and obvious reasons that a witness free from malice could be judged otherwise and that the expense and distress of . . . harassing litigation might cause a witness not to speak openly and freely" (internal quotation marks omitted)).[10]

---

[10] For this reason, we disagree with the plaintiff's characterization of the chilling effect that retaliatory litigation would have on amici

As the trial court recognized, "[a]micus briefs are an important part of the appellate process." Amicus briefs aid judicial decision making by providing valuable information about broader implications of the legal issues before the court that the parties themselves may not address in their briefs.  See 3B C.J.S., Amicus Curiae § 12 (2026) ("[a]micus curiae presentations assist the court by broadening its perspective on the issues raised by the parties; among other services, they facilitate informed judicial consideration of a wide variety of information and points of view that may bear on important legal questions").  The importance of amicus briefs is underscored by the fact that our Supreme Court regularly solicits participation by amici curiae to address specific legal issues presented in pending appeals.  See, e.g., Supreme Court Notices, Connecticut Judicial Branch, available at http://www.jud.ct.gov/supremecourt (last visited June 18, 2026) (inviting amici to file briefs for specific appeals on August 15 and December 5, 2025, and January 30, 2026).  Moreover, the court frequently cites or discusses arguments raised by amici; indeed, as the trial court noted, our Supreme Court cited information presented by the defendants in their amicus brief, ultimately concluding that "the public policy of this state supports providing a qualified privilege for statements made by individuals alleging sexual assault to proper authorities at institutions of higher education." *Khan* v. *Yale University*, supra, 347 Conn. 52; see id., 8 ("[s]upporting Doe's position, the amici indicate that

---

as "speculative" and "dubious." He argues that "denying absolute immunity to proposed amici in no way silences or chills legitimate advocacy" because "[t]he only 'speech' that would be deterred by withholding immunity is false and defamatory factual allegations" which is "not protected speech in any event . . . ." As the court recognized in *Simms*, however, the very purpose of the litigation privilege is to avoid the chilling effect that would result from having to predict in advance whether a statement could later be construed as false or defamatory. "[I]f absolute immunity is not available, attorneys may feel constrained in advocating for their clients because of fears that their legitimate conduct may be *misinterpreted* as wrongful by dissatisfied parties and thus give rise to future lawsuits." (Emphasis in original.)  *Simms* v. *Seaman*, supra, 308 Conn. 563 n.25.

one in four women, and one in fifteen men, will experience sexual assault while attending college" (footnote omitted)); id., 52 ("As the amici explain, sexual assault remains a serious and vastly underreported crime. The hesitation of victims to report such crimes is, in no small part, due to a fear of retaliation." (Footnote omitted.)). The value of amici depends on their ability to be candid in their arguments. If amici and their attorneys had to worry about the prospect of retaliatory litigation from disaffected litigants, it would chill their participation and diminish the usefulness of their contributions to the litigation process.

The plaintiff argues that persons seeking to appear as amici curiae are not participants in the proceeding because they require permission to appear and that, "[u]ntil such permission is granted, a *proposed* amicus is literally a nonparticipant." (Emphasis in original.) As the trial court correctly observed, however, this distinction is both inconsistent with our case law concerning the litigation privilege and unworkable as a matter of practice. Our Supreme Court has recognized that the privilege applies not just to formal pleadings, but to all "documents prepared in connection with a court proceeding . . . [including] those preparatory communications that may be directed to the goal of the proceeding." (Citation omitted; internal quotation marks omitted.) *Scholz* v. *Epstein*, 341 Conn. 1, 28–29, 266 A.3d 127 (2021). For that reason, the litigation privilege applies to statements made prior to the formal commencement of litigation, as long as those statements are prepared in connection with a contemplated proceeding and are directed toward the goal of the proceeding. See, e.*g.*, *Hopkins* v. *O'Connor*, 282 Conn. 821, 841, 925 A.2d 1030 (2007) (statement contained in police report that officer was required to prepare in order to commence proceedings before Probate Court for commitment of person with psychiatric disabilities); *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 95, 856 A.2d 372 (2004) (citizen complaint that led to police department internal affairs investigation); *Kelley* v. *Bonney*, 221 Conn. 549,

574, 606 A.2d 693 (1992) (discussion with potential witness aimed at marshaling evidence to support prospective administrative complaint to state board of education). Thus, the fact that the defendants' statements were contained in a filing made before they were granted permission to appear and file their brief does not preclude the application of the litigation privilege.

Moreover, as a practical matter, it would be illogical to withhold the protections of the litigation privilege until after proposed amici receive permission to appear, as doing so would effectively dissuade participation in the amicus process to the same extent as if the litigation privilege did not apply at all. Because our rules of practice generally require persons interested in filing an amicus brief to obtain permission before doing so, under the plaintiff's proposed rule, prospective amici would have to file their applications for permission and proposed briefs under a cloud of uncertainty, not knowing whether the statements in their filings were protected by the litigation privilege until after the court ruled on their applications. It would defeat the prophylactic purpose of the privilege to require the person seeking its protection to speak before knowing whether they could be held liable for their words.

Relying on case law from our Supreme Court addressing the distinct doctrine of judicial immunity, the plaintiff also argues that the protections of the litigation privilege should be limited to "essential participants" in judicial proceedings that are "directly involved in the core functions of the judicial process."[11] He argues that, unlike judges, attorneys, parties, and witnesses, the role of amici is "that of an impartial advisor offering perspective" and is not "intrinsically linked to the

---

[11]The doctrine of judicial immunity provides judges and certain other judicial officers immunity from suit "for judicial acts [a judge] undertakes in his capacity as a judge." (Internal quotation marks omitted.) *Gross* v. *Rell*, 304 Conn. 234, 246, 40 A.3d 240 (2012). Absolute judicial immunity extends to judicial officers other than judges only "insofar as they perform actions that are integral to the judicial process." (Internal quotation marks omitted.) Id., 247.

adversarial system and the pursuit of justice within a dispute." We are not persuaded.

The plaintiff does not cite any case from this or any other jurisdiction holding that application of the litigation privilege requires an inquiry into whether the person seeking its protections was an "essential participant." As discussed previously, our Supreme Court repeatedly has stated that the privilege applies to "*all* participants in judicial proceedings." (Emphasis added.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 627. Our Supreme Court observed in *Simms* v. *Seaman*, supra, 308 Conn. 523, that this formulation is consistent with the scope of the privilege recognized by state and federal courts in other jurisdictions. See id., 555 ("as the United States Supreme Court explained in *Briscoe* v. *LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983), the litigation privilege at common law protected *all* participants in the court system" (emphasis in original)); see also, e.g., *Day* v. *Johns Hopkins Health System Corp.*, 907 F.3d 766, 772 (4th Cir. 2018) ("[t]he benefits of the immunity [afforded by the litigation privilege] flow to all participants in litigation"); *Loigman* v. *Township Committee of Middletown*, 185 N.J. 566, 585, 889 A.2d 426 (2006) ("[t]he privilege shields any communication . . . made in judicial or quasi-judicial proceedings . . . by litigants or other participants authorized by law" (internal quotation marks omitted)); *Allen* v. *Ortez*, 802 P.2d 1307, 1311 (Utah 1990) ("the integrity of the judicial system requires that there be free and open expression by all participants and that this will only occur if they are not inhibited by the risk of subsequent defamation suits"). In fact, the only decisions of which we are aware that have addressed the issue have held that amici curiae are considered litigation participants for purposes of the privilege and that they therefore enjoy absolute immunity for their litigation related statements. See *Weiser Law Firm PC* v. *Hartleib*, United States Court of Appeals, Docket No. 23-55693 (9th Cir. December 5, 2024) (statements by amicus curiae in briefs and during court proceedings are protected by litigation privilege

because amicus is "[participant] authorized by law" (internal quotation marks omitted)); *Randazza* v. *Cox*, United States District Court, Docket No. 2:12-CV-2040 (JAD) (May 21, 2014) (attorney's statements in amicus brief were protected by litigation privilege).

Moreover, we disagree with the plaintiff that extending the protections of the privilege to amici is unnecessary because their role is limited to "that of an impartial advisor offering perspective . . . ." Courts and commentators have recognized that, although the description of amici as "an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and whose function is to advise in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another . . . was once accurate and still appears in certain sources . . . [it] became outdated long ago." (Citations omitted; internal quotation marks omitted.) *Neonatology Associates, P.A.* v. *Commissioner of Internal Revenue*, 293 F.3d 128, 131 (3d Cir. 2002); see also 16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975 (5th Ed. 2026) ("There is nothing wrong, in current practice, with an amicus possessing an interest in the relevant issues. The notion of the amicus as impartial became outdated long ago." (Internal quotation marks omitted.)); S. Krislov, "The Amicus Curiae Brief: From Friendship to Advocacy," 72 Yale L. J. 694, 703–704 (1963) (describing evolution of amicus curiae participation by private groups with interest in litigation and explaining that "the institution of the amicus curiae brief has moved from neutrality to partisanship, from friendship to advocacy"). Given the time and resources required to prepare a thorough and persuasive amicus brief, it is not surprising that amicus participants will have some interest in the outcome of the cases in which they seek to appear. See, e.g., *Neonatology Associates, P.A.* v. *Commissioner of Internal Revenue*, supra, 131–32 ("[a] quick look at . . . opinions [of the Supreme Court of the United States] discloses that corporations, unions, trade and professional associations, and other parties with 'pecuniary' interests

appear regularly as amici"). Indeed, our rules of practice expressly require that applications for permission to file an amicus brief "state concisely the nature of the applicant's interest" in the matter; Practice Book § 67-7A (b); and contemplate that amici may support one side or the other in the litigation. See Practice Book § 67-7A (a) (requiring application to appear as amicus curiae to be filed "within twenty days after the filing of the brief of the party, if any, whom the applicant intends to support" or, "[i]f there is no such party, then . . . twenty days after the filing of the last appellee's brief").

For these reasons, we conclude that the trial court properly concluded that the litigation privilege applies to persons seeking to appear as amici curiae.

B

We also disagree with the plaintiff's claim that the court erred in concluding that the challenged statements were pertinent to the proceeding in *Khan* v. *Yale University*, supra, 347 Conn. 1. "[C]ommunications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137. The test for determining whether a statement is sufficiently pertinent to fall within the privilege is "very generous"; *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 727, 161 A.3d 630 (2017); and is satisfied as long as the statement "has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." (Internal quotation marks omitted.) *McManus* v. *Sweeney*, 78 Conn. App. 327, 335, 827 A.2d 708 (2003); see also 3 Restatement (Second), Torts § 587, comment (c), p. 249 (1977) ("It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry.").

The challenged statements in the proposed amicus brief plainly satisfy this broad standard of pertinence. In the federal lawsuit that gave rise to the certified appeal in *Khan* v. *Yale University*, supra, 347 Conn. 1, the plaintiff claimed that Doe defamed him by accusing him of rape during a university disciplinary proceeding in which the decision maker ultimately credited her statements and expelled the plaintiff on the basis of her accusations. Id., 15–16. As our Supreme Court explained, "[t]he primary question presented" in the certified appeal was "whether Doe should . . . be afforded absolute immunity from suit for her statements made during the [disciplinary] proceeding." Id., 7–8. Thus, Doe's allegation that the plaintiff raped her and Yale's decision to expel the plaintiff on the basis of her allegation were central to the issues both in the underlying litigation and in the appellate proceedings before the Supreme Court. The defendants' statements referring to the plaintiff as a rapist mirrored Doe's allegation and, therefore, unquestionably " 'ha[d] some reference' " to the issues before the court. *McManus* v. *Sweeney*, supra, 78 Conn. App. 335.

Contrary to the plaintiff's contention, the fact that the Supreme Court initially rejected the proposed amicus brief has no bearing on whether those statements were pertinent to the subject of the appeal for purposes of the litigation privilege. As the trial court observed, the Supreme Court's order did not address the relevance of the defendants' statements but, rather, indicated that those statements were " 'not supported by the record.' " The broad standard for pertinence under the litigation privilege does not depend on whether there is evidentiary support for the challenged statement. "The fact that the defamatory publication is an unwarranted inference from the alleged or existing facts is not enough to deprive the party of his privilege, if the inference itself has some bearing upon the litigation." 3 Restatement (Second), supra, § 587, comment (c), p. 249. Thus, while a statement without evidentiary support may constitute improper or overzealous advocacy under the rules of practice or the Rules of Professional Conduct, that does

not render it impertinent for purposes of the litigation privilege.  As our Supreme Court has explained, in determining whether a statement by a litigation participant is protected by absolute immunity, "we [do] not assess whether the [statement] was proper advocacy" because "the purpose of the privilege is to provide immunity from having to defend such advocacy decisions, even if that means immunity occasionally applies to misconduct." *Scholz* v. *Epstein*, supra, 341 Conn. 14–15.

The plaintiff also argues that the challenged statements were impertinent in light of the procedural context of the certified appeal in *Khan* v. *Yale University*, supra, 347 Conn. 1, which required the court "to accept [the allegations of the complaint] as true and construe [them] in [the plaintiff's] favor for purposes of answering the certified questions of law."[12]  Id., 11–12.  The plaintiff argues that the statements referring to him as a rapist were impertinent because they "directly contradicted" the allegations of the complaint and, therefore, were not "germane to the legal questions presented . . . ."

We disagree with the plaintiff's argument because it essentially equates the pertinence inquiry with the standard of relevance governing the admissibility of evidence, and it is well established that "the bounds of [pertinence] with respect to the doctrine of absolute privilege are more generous than the relevance of evidence at trial." *Brady* v. *Bickford*, 179 Conn. App. 776, 797–98, 183 A.3d 27 (2018).  Evidence is relevant at trial if it "tend[s] to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *Glen S.* v. *Commissioner of Correction*, 223 Conn. App. 152, 162, 307 A.3d 951, cert. denied, 348 Conn. 951, 308 A.3d 1038 (2024).  In contrast, a statement is pertinent for purposes of the litigation privilege as long as it "has

___

[12] As the court explained, the certified appeal arose from the District Court's granting of Doe's motion to dismiss for failure to state a claim pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure.  See *Khan* v. *Yale University*, supra, 347 Conn. 12 n.9.

some reference to the subject matter of the proposed or pending litigation," even if it is "not . . . strictly relevant to any issue involved in it." (Internal quotation marks omitted.) *McManus* v. *Sweeney*, supra, 78 Conn. App. 335. As we have explained, the statements referring to the plaintiff as a rapist had "some reference" to the subject matter of the litigation in *Khan* v. *Yale University*, supra, 347 Conn. 1, because the plaintiff sued Doe for her statements accusing him of rape in the disciplinary proceeding, and the issues before the Supreme Court in the certified appeal concerned whether Doe had immunity for those statements. Accordingly, we conclude that the trial court did not err in concluding that the statements in the proposed amicus brief were pertinent for purposes of the litigation privilege.

II

We next address the plaintiff's claim that the court erred in concluding that the litigation privilege barred count four of the complaint, which purports to assert a claim for abuse of process. As explained previously, although at common law the litigation privilege "bar[red] persons accused of crimes from suing their accusers for defamation," the scope of the privilege has since "expanded to bar a variety of retaliatory civil claims arising from communications or communicative acts occurring in the course of a judicial or quasi-judicial proceeding, including, but not limited to, claims for tortious interference, intentional infliction of emotional distress, fraud, and violations of [the Connecticut Unfair Trade Practices Act]." *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137. Despite this expansion, "there are limits to the application of the litigation privilege to attorney conduct and communications." *Scholz* v. *Epstein*, supra, 341 Conn. 10. Specifically, "[our Supreme Court] has recognized a distinction between attempting to impose liability [on] a participant in a judicial proceeding for the words used therein and attempting to impose liability [on] a litigant for his improper use of the judicial system itself. . . . In this regard, [the court has] refused to

apply absolute immunity to causes of action alleging the improper use of the judicial system." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 138.

As a general matter, well pleaded claims of vexatious litigation and abuse of process are not barred by the litigation privilege "because they challenge the underlying purpose of the litigation rather than an attorney's role as an advocate for his or her client." *Simms* v. *Seaman*, supra, 308 Conn. 546. Specifically, these causes of action "seek to hold an individual liable for . . . the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury [on] another individual in the form of unfounded actions." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 138. "We have treated these claims differently in part because of restraints built into [them] by virtue of [their] stringent requirements"; id., 138–39; which safeguard against the possibility that they will be used by disappointed litigants to pursue retaliatory litigation, rather than to challenge the improper use of the judicial system itself. With respect to abuse of process claims in particular, these safeguards are met by requiring the plaintiff to demonstrate that the defendant used the "legal process . . . primarily to accomplish a purpose for which it is not designed"; (emphasis omitted; internal quotation marks omitted) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987); and to "point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation."[13] Id., 497.

This does not, however, mean that a plaintiff can avoid the litigation privilege merely by repackaging a defamation claim as one for abuse of process. Rather, it is well recognized that the label a party attaches to a cause of

---

[13]Although not at issue in the present case, the tort of vexatious litigation likewise includes such "built-in restraints" in that it requires proof that "the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice . . . [that] the defendant acted without probable cause . . . [and that] the [prior] proceeding terminated in the plaintiff's favor." (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 542 n.12.

action does not control whether it is barred by the litigation privilege. As our Supreme Court has explained, "in expanding the doctrine of absolute immunity to bar claims beyond defamation, [the] court has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process. Indeed . . . because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant." (Emphasis omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 628; see also *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991) ("whether or not a party is liable for 'vexatious suit' in bringing an unfounded and malicious action, he is not liable for the words used in the pleadings and documents used to prosecute the suit"). To ensure that the protections of the privilege cannot be evaded through creative pleading, our Supreme Court has instructed that courts should "consider not only the elements of the cause of action but also whether the complaint contains allegations that a party suffered harm because of a falsehood communicated by the opponent's attorney." (Internal quotation marks omitted.) *Dorfman* v. *Smith*, supra, 342 Conn. 600–601; see also id., 601 n.9 ("[T]he fact that the plaintiff alleged that the conduct at issue constituted an abuse of the judicial system does not make the claim at issue akin to a claim for abuse of process. Rather, we look to the plaintiff's factual allegations to determine whether the plaintiff's claim is premised on the communication of false statements.").

Applying the foregoing principles to the present case, we conclude that the trial court did not err in determining that count four is barred by the litigation privilege. As explained previously, to adequately state an abuse of process claim, a plaintiff is required to identify "*specific misconduct* intended to cause specific injury outside of the normal contemplation of private litigation."

(Emphasis added.) *Mozzochi* v. *Beck*, supra, 204 Conn. 497. This requirement is not satisfied merely by alleging that a defendant has as one of his or her goals the desire to obtain a result that is ancillary to the usual purpose of litigation. Rather, the plaintiff must allege that the defendant used the machinery of legal process, and not just the words therein, to accomplish a result that could not be obtained through proper means. See, e.g., *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 775, 802 A.2d 44 (2002) (plaintiff stated abuse of process claim by alleging that defendant wrongfully obtained execution in excess of amount owed and used execution to pressure plaintiff to settle disputed claim).

Here, the only alleged conduct identified by the plaintiff to support count four of the complaint is the defendants' choice of words in the proposed amicus brief, and the only harm that the plaintiff alleges he suffered is that caused by the fact that the defendants labeled him a rapist in the brief. There is no allegation that the defendants took any action outside the normal course of the amicus process or that they sought any relief other than to urge the Supreme Court to hold that university disciplinary proceedings are quasi-judicial in nature. Instead, count four rests entirely on the allegation that the words used by the defendants caused him harm in a way that was ancillary to the litigation. In fact, the plaintiff acknowledges in his appellate brief that count four is based on the allegation that the defendants misused the amicus process "by falsely branding [the plaintiff] a rapist . . . ." The plaintiff's attempt to hold the defendants liable for their communication of allegedly defamatory statements in a court filing is quintessentially a defamation claim that falls within the core of the litigation privilege. See, e.g., *Dorfman* v. *Smith*, supra, 342 Conn. 600 (claim is barred by litigation privilege where, "like a defamation claim, [it] is premised on the communication of false statements during litigation").

We disagree with the plaintiff that the trial court "improperly resolved factual questions about the defendants' purpose" when it stated that the allegations in the complaint concerning the defendants' primary purpose in filing the amicus brief "are essentially conclusions concerning the defendants' motivation that the court need not rely upon in evaluating whether the defendants' actions amounted to abuse of process." The plaintiff relies on the allegations in count four averring that "the defendants' primary purpose in attempting to file the [proposed] amicus brief was . . . [t]o smear the plaintiff . . . [t]o harm the plaintiff's reputation . . . [t]o serve as an adversary in the litigation against the plaintiff . . . [t]o discourage the plaintiff from maintaining his lawsuit; and . . . [t]o raise funds for the defendants' organizations." The plaintiff argues that these allegations are sufficient to state an abuse of process claim because they "assert that the defendants misused the amicus process for purposes entirely foreign to the proper role of an amicus curiae."

As we have explained, however, to state an abuse of process claim, the plaintiff was required to allege that the defendants engaged in "specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." *Mozzochi* v. *Beck*, supra, 204 Conn. 497. The trial court properly concluded that, because count four is based entirely on the assertion that the defendants' choice of words in the proposed amicus brief caused the plaintiff harm incidental to the litigation, it did not identify any misconduct that is actionable in an abuse of process claim. Thus, the court did not "[resolve] factual questions about the defendants' purpose" but, rather, properly concluded that the allegations in question were insufficient to state an abuse of process claim.[14] Accordingly, we conclude that the trial court

[14]In the trial court, the defendants also claimed that, as a matter of law, the plaintiff could not maintain an abuse of process claim against them because an amicus brief is not the kind of "process" that can give rise to such a claim. See, e.g., *Dorfman* v. *Smith*, supra, 342 Conn. 637 n.11 (*Ecker, J.*, concurring in part and dissenting in part) (noting

did not err in dismissing count four of the complaint on the basis that it was barred by the litigation privilege.

## III

We next address whether the litigation privilege barred the portion of the plaintiff's claims alleging that the defendants republished the proposed amicus brief. As explained previously, the trial court concluded that the defendants' alleged republication of the brief was protected by the fair report privilege, rather than the litigation privilege. Following oral argument before this court, we, sua sponte, ordered the parties to file supplemental briefs addressing "whether the dismissal of the portion of the plaintiff's claims pertaining to the defendants' republishing of the proposed amicus brief may be affirmed on the alternative ground that the republishing of the brief was protected by the litigation privilege."[15] In that order, we directed the parties' attention to *Kelley* v. *Bonney*, supra, 221 Conn. 549, in which our Supreme Court held that "[p]ublication to the media of material that the media was independently

"that there is little clarity regarding the scope and meaning of the term 'process'" that can give rise to abuse of process claim and that "[some] authorities have limited the tort to process of a type that compels the performance or forbearance of some prescribed act" (internal quotation marks omitted)). The trial court did not address this issue because it concluded that, even if an amicus brief could give rise to an abuse of process claim, the plaintiff failed to allege such a claim. Because the defendants do not raise this claim as an alternative ground to affirm, we likewise do not address that issue.

[15]We note that, although the trial court did not address this issue and neither party raised it as an alternative ground for affirmance, we properly may address it because we afforded the parties the opportunity to brief the issue and, unlike the fair report privilege, the litigation privilege implicates the trial court's subject matter jurisdiction. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 161, 84 A.3d 840 (2014) ("the reviewing court not only can but must address an issue implicating subject matter jurisdiction whenever it arises, regardless of how the issue comes to the court's attention"); *Kloiber* v. *Jellen*, 207 Conn. App. 616, 621, 263 A.3d 952 (2021) (addressing issue of whether plaintiff had standing to maintain action after ordering parties to file supplemental briefs because "a question of subject matter jurisdiction may be raised at any time, including sua sponte invocation by a reviewing court").

entitled to view . . . cannot provide a basis for a claim of defamation." Id., 576. We conclude that the trial court did not err in dismissing the portion of the plaintiff's claims pertaining to the defendants' alleged republication of the brief on the alternative ground that, under *Kelley*, the litigation privilege bars those claims.

In *Kelley*, our Supreme Court held that the litigation privilege barred a defamation claim against a member of a local board of education (board) who provided to a local newspaper a copy of an administrative complaint that she had submitted to the state department of education (department). The plaintiff in *Kelley* was a former teacher who retired while facing investigation for inappropriate classroom conduct. Id., 553. After the board voted not to proceed with the investigation, four members of the board who had dissented from that vote, including the defendant, submitted a verified petition and complaint to the department detailing the allegations against the plaintiff and requesting that the department investigate the matter. Id., 555–56. Thereafter, an editorial writer for the local newspaper asked the defendant for a copy of the complaint, and the defendant provided him with a copy. Id., 574–75. The plaintiff brought a defamation claim against the defendant alleging, inter alia, that she defamed him when she sent the complaint to the editorial writer. Id., 575.

Our Supreme Court concluded that the litigation privilege barred the plaintiff's claim. In reaching that conclusion, the court first explained that, although "the . . . proceedings before the [department] were quasijudicial in nature,[16] not all communications relating to that topic are necessarily absolutely privileged." (Footnote added.) Id. The court further observed that, "[i]n determining

---

[16]Earlier in its opinion, the court in *Kelley* concluded that the plaintiff's claims against the other board members, which were based on the allegation that they submitted the verified complaint to the department, were barred by the litigation privilege because the administrative proceeding that resulted from the complaint was quasi-judicial in nature and the "submission of the verified petition and complaint was a step in that proceeding." *Kelley* v. *Bonney*, supra, 221 Conn. 571.

whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the matter is published" and that "[t]he privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged." (Citation omitted; internal quotation marks omitted.) Id. The court went on to explain, however, that, although "[p]ublication to the media is ordinarily not privileged . . . [p]ublication to the media of material that the media was independently entitled to view . . . cannot provide a basis for a claim of defamation." (Citation omitted.) Id., 576. Because there would be "no persuasive justification for punishing [the defendant] for publication to [the newspaper] of the formal written complaint and petition if [the newspaper] was independently permitted to view the material," the court reasoned that "[t]he pivotal question [was] whether, regardless of the actions of the defendant, the [newspaper] would have been entitled to access to the complaint." Id., 576–77. After explaining that the Freedom of Information Act, General Statutes § 1-200 et seq.,[17] provided the newspaper a right to access and receive a copy of the complaint from the department, the court concluded that, "because [the newspaper] had a statutory right to the information provided by [the defendant]," the plaintiff's claim was barred by the litigation privilege. Id., 579.

Since *Kelley*, numerous state and federal courts have concluded that, under the holding of that case, the litigation privilege bars claims against a person who repeats or republishes the contents of an otherwise privileged statement contained in a publicly accessible document.[18]

[17]At the time *Kelley* was decided, the relevant provisions of the Freedom of Information Act were codified at General Statutes (Rev. to 1991) §§ 1-18a and 1-19. See *Kelley* v. *Bonney*, supra, 221 Conn. 577.

[18]See, e.g., *Modzelewski's Towing & Storage, Inc.* v. *Government Employees Ins. Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-21-6058030-S (August 2, 2024) (relying on *Kelley* in applying litigation privilege where statements in question were contained in "public record under the [Freedom of Information Act] . . . and the public would be therefore independently entitled to view this information"), aff'd, 238 Conn. App. 158, 355 A.3d 628 (2026); *Barr* v. *MFI Management, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-17-5017309 (March 25, 2019) (litigation

Courts in several other jurisdictions have reached the same conclusion.[19]  These courts recognize that the act of republishing a publicly accessible court filing "is a truthful sharing of a privileged and public document";

privilege barred claims based on party's act of forwarding copy of complaint " 'to reporters and various websites' "); *Moore* v. *Sequeira*, United States District Court, Docket No. 3:21-CV-787 (VAB) (D. Conn. August 18, 2023) (dissemination to media of police officer's termination letter was protected by privilege because it was public record under Freedom of Information Act); *AF Holdings, LLC* v. *Olivas*, United States District Court, Docket No. 3:12-CV-01401 (JBA) (D. Conn. September 24, 2014) (relying on *Kelley* in concluding that, "[s]ince legal complaints, once filed, are available to the public, the publication of [the] [p]laintiff's complaint on its counsel's website, like the publication of a complaint to the media, is protected by the judicial proceedings privilege"); *Held* v. *Silver*, United States District Court, Docket No. 3:10-CV-00992 (CSH) (D. Conn. October 16, 2013) ("[the] forwarding of [a] complaint to [a third party], even if done with the explicit intention of impacting [the third party's] view on [the] [d]efendant's character or reputation, is not actionable as defamation, because such an act is a truthful sharing of a privileged and public document," but commentary on complaint was not privileged because it "[went] significantly beyond anything that could be considered privileged or a mere summary of the contents of [the] complaint"); *Field* v. *Kirton*, 856 F. Supp. 88, 97–98 (D. Conn. 1994) (litigation privilege barred claims based on statement to press about prior action because statement "contains no information which cannot be gleaned from the [v]erified [p]etition which had already been filed, and which was therefore already publicly available, in the New York Supreme Court . . . [and] there is nothing to suggest that the media somehow lacked the ability to gain access, and to review independently, the [v]erified [p]etition" (footnote omitted)).

[19]See, e.g., *Phi Theta Kappa Honor Society* v. *HonorSociety.Org, Inc.*, United States District Court, Docket No. 3:22-CV-208 (CWR) (RPM) (S.D. Miss. March 29, 2024) (press release announcing litigation was protected by privilege where statements were "so similar to [the plaintiff's] claims in the [a]mended [c]omplaint that they warrant privilege"); *Norman* v. *Borison*, 418 Md. 630, 664, 17 A.3d 697 (2011) (attorney's republication of complaint on website was protected by litigation privilege because, "[o]nce a document is made public, Maryland law does not limit who, where, or the extent to which one may view that document" (emphasis omitted)); *Prokop* v. *Cannon*, 7 Neb. App. 334, 343, 583 N.W.2d 51 (1998) (attorney's statements to media describing nature and purpose of action were protected by litigation privilege); *Chavez-Neal* v. *Kennedy*, 485 P.3d 811, 815 (N.M. App. 2021) (attorney's statements in television interview discussing litigation were protected by litigation privilege "because they were . . . limited to reiteration and explanation of the allegations of the complaint").  But see *Asay* v. *Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979) (holding litigation privilege did not protect party who provided copy of complaint to newspaper).

*Held* v. *Silver*, United States District Court, Docket No. 3:10-CV-00992 (CSH) (D. Conn. October 16, 2013); and it would serve no practical purpose to hold that a party enjoys an absolute privilege to publish defamatory statements in a court filing but loses that privilege merely by facilitating public access to that filing, even though the filing itself is a matter of public record. As the United States District Court for the Southern District of New York recognized, especially "[i]n the age of digital communication, it is illogical to protect allegations in a publicly filed complaint but not repetition or explanation of those same allegations outside the courthouse" because "[a]llegations of interest to the public or even to a single competitive industry will inevitably reach interested parties . . . ." (Footnote omitted.) *PowerDsine, Inc.* v. *AMI Semiconductor, Inc.*, 591 F. Supp. 2d 673, 684 (S.D.N.Y. 2008).

We agree with these courts and conclude that, under *Kelley*, the litigation privilege bars the plaintiff's claims to the extent they are based on the defendants' republication of the proposed amicus brief. As our Supreme Court stated in *Kelley*, there is "no persuasive justification for punishing [a defendant]" merely for republishing a document that the public is "independently permitted to view . . . ." *Kelley* v. *Bonney*, supra, 221 Conn. 577. Here, the complaint alleges that the defendants published the proposed brief "online" and "to donors . . . ." The complaint also alleges that the brief remains publicly available on the Judicial Branch website and, in fact, the complaint contains a hyperlink to the proposed brief on the Judicial Branch website, confirming that it is publicly accessible. There is no allegation in the complaint that the defendants edited or altered the brief before they republished it or that they made any statements about the contents of the brief other than simply republishing a verbatim copy of what is already publicly available. Because the proposed amicus brief is a publicly filed court record that remains accessible to the general public, the litigation privilege bars any claims that are based on the allegation that the defendants republished the brief.

The plaintiff argues that *Kelley* is distinguishable from the present case because the defendant in *Kelley* shared a copy of the complaint in response to a specific request from the editorial writer. The plaintiff contends that we should construe *Kelley* to protect republication only when the recipient of the document "would have obtained the material anyway" because, in that instance, the act of republication does not cause "incremental defamatory exposure . . . ." (Emphasis omitted.)

Nothing in *Kelley*, however, suggests that the court's decision turned on the fact that the editorial writer had requested a copy of the complaint. Although the court mentioned that fact in passing while summarizing the factual background, the court's analysis focused on the legal question of whether the reporter had a right to access the complaint under the Freedom of Information Act. Indeed, the court referred to the issue of whether the reporter "would have been *entitled* to access to the complaint" as "[t]he *pivotal* question" in its analysis; (emphasis added) *Kelley* v. *Bonney*, supra, 221 Conn. 576–77; and concluded that the litigation privilege applied "because [the reporter] had a statutory right to the information . . . ." Id., 579. The court's analysis did not even refer to the fact that the reporter had sought a copy of the complaint, much less suggest, as the plaintiff argues, that its decision "turn[ed] on whether" the reporter "would have obtained the material anyway." In fact, the plaintiff does not cite a single case that has construed *Kelley* in such a limited fashion, and we have not discovered any such case in our own research. Accordingly, we reject the plaintiff's attempt to distinguish *Kelley* on that basis.

The plaintiff also argues that, even if we disagree with his interpretation of *Kelley*, dismissal is not warranted because there are factual questions relevant to this issue that must be resolved by the trial court. Specifically, he contends that **(1)** whether the proposed brief "was publicly accessible on the Judicial Branch website at the time of republication," **(2)** whether visitors to the

defendants' websites "had any independent means or motivation to access the brief," and **(3)** "whether the defendants' republication reached a new audience" are all questions that "remain unresolved." We disagree.

As to the first issue, the complaint expressly alleges that the defendants filed the proposed brief with the Supreme Court and that the brief "remains available permanently on the Connecticut Supreme Court website . . . ." It is well established that, in the absence of certain exceptions, pleadings and other judicial documents filed in court are presumptively open to the public. See Practice Book § 11-20A; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 46, 970 A.2d 656, cert. denied, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 **(2009)**. The complaint does not allege, and there is nothing in the record to indicate, that the proposed brief was subject to any such exception. Moreover, the defendants expressly argued before the trial court that their republishing of the brief was privileged, either by way of the litigation privilege[20] or the fair reporting privilege, because it was a publicly accessible document, and the plaintiff never attempted to refute the defendants' contention that the proposed brief was publicly available. Thus, the record does not support the plaintiff's claim that there was an unresolved factual question concerning the public availability of the proposed brief.

The other two factual issues identified by the plaintiff have no bearing on the applicability of the litigation privilege under *Kelley*. As we have explained, the court's analysis in that case turned on whether the document in question was one that the public has a right to access, not

---

[20]Contrary to the plaintiff's contention, one set of defendants did claim before the trial court that the litigation privilege barred those portions of the plaintiff's claims that are based on the defendants' alleged republication of the brief. Specifically, these defendants argued that, because "the proposed amicus brief was a public judicial filing, and the plaintiff alleges only that it was republished as-is by the defendants . . . [t]he plaintiff's allegation is thus insufficient to take the proposed amicus brief outside the scope of the litigation privilege and fails to establish subject matter jurisdiction." **(**Citation omitted.**)**

whether the audience that actually received the document would have done so in the absence of the defendants' actions. Accordingly, the factual issues identified by the plaintiff are not relevant to whether the litigation privilege bars the plaintiff's claims. We, therefore, conclude that the trial court did not err in granting the defendants' motions to dismiss those portions of the plaintiff's claims asserting that the defendants republished the proposed amicus brief, albeit on the alternative ground that the litigation privilege bars those claims.[21]

IV

Finally, the plaintiff claims that the court improperly addressed the defendants' anti-SLAPP motions after concluding that the litigation privilege barred his claims. The plaintiff argues that, because the litigation privilege implicates subject matter jurisdiction, "[t]he trial court's determination that the litigation privilege applied deprived it of jurisdiction to do anything except dismiss the case immediately." In support of his claim, the plaintiff relies on this court's decision in *Robinson* v. *V. D.*, 229 Conn. App. 316, 328 A.3d 198 (2024), in which we held that, "[b]ecause [a] defendant's absolute immunity claim implicates the trial court's subject matter jurisdiction, it presents a threshold issue that we must address before turning to the merits of the special motion to dismiss." Id., 25–26. The plaintiff further argues that the fact that Sanctuary did not file a motion to dismiss for lack of subject matter jurisdiction "is immaterial" because "[s]ubject matter jurisdiction cannot be waived, and once the court found [that] the privilege applied to any defendant's conduct, it was required to dismiss as to all defendants whose conduct fell within that privilege." We agree.

---

[21]Fierberg, which filed an affidavit in connection with its motion to dismiss attesting that it did not republish the brief, also argued before the trial court and on appeal that it was entitled to dismissal of the action on that basis. Although the trial court agreed with that argument, our conclusion that the litigation privilege applies irrespective of whether Fierberg republished the proposed brief obviates any need to address that alternative basis for dismissal as to Fierberg.

The following procedural history is relevant to this claim. As stated previously in this opinion, although all of the other defendants filed both motions to dismiss for lack of subject matter jurisdiction and special motions to dismiss pursuant to § 52-196a, Sanctuary only filed a special motion to dismiss. All of the defendants, including Sanctuary, asserted in their special motions to dismiss that the complaint should be dismissed because it is based on the defendants' exercise of their right to petition the government in connection with a matter of public concern and that the plaintiff could not establish probable cause to prevail on the merits of the complaint because, inter alia, the litigation privilege barred his claims.

In its memorandum of decision, after addressing the motions to dismiss for lack of subject matter jurisdiction filed by the other defendants, the trial court stated that, because "Sanctuary . . . filed a separate . . . special motion to dismiss under the anti-SLAPP statute and did not file a motion to dismiss for lack of subject matter jurisdiction . . . [i]t is therefore necessary to resolve its motion." The court went on to note that "the other . . . defendants . . . have filed or joined their own special motions to dismiss" and stated that "[r]esolving these other . . . special motions to dismiss may provide an alternative ground for their dismissal from the case in the event that an appellate court reverses the court's decision on their motion to dismiss for lack of subject matter jurisdiction." Addressing the merits of the special motions to dismiss, the court concluded that the defendants met their burden under the first prong of § 52-196a (e) (3)[22] by establishing that the complaint is based on their exercise of their right to petition the government in connection with a matter of public concern. The court further concluded that, because the plaintiff's claims are barred by the litigation privilege, the plaintiff necessarily failed to meet his burden under the second prong of § 52-196a (e) (3) to establish probable cause that he would prevail on the merits.

---

[22]See footnote 7 of this opinion.

The court thereafter issued separate orders granting both the motions to dismiss for lack of subject matter jurisdiction filed by all defendants except Sanctuary and the special motions to dismiss filed by all defendants. Subsequently, all defendants jointly filed a motion requesting that the court extend the time to file motions for attorney's fees pursuant to § 52-196a (f)[23] until thirty days after the resolution of this appeal. The court granted that motion without objection. Thus, the issue of attorney's fees remains pending, and the availability of those fees under § 52-196a (f) is contingent on our resolution of this issue.

"Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 542, 590 A.2d 914 (1991). "Our Supreme Court has long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal."[24] (Internal quotation marks omitted.) *Haydusky's Appeal from Probate*, 220 Conn. App. 267, 276, 297 A.3d 1072 (2023).

Because subject matter jurisdiction goes to the court's authority to decide the case before it, a trial court faced with a claim that it lacks subject matter jurisdiction

---

[23]General Statutes § 52-196a (f) provides in relevant part: "(1) If the court grants a special motion to dismiss under this section, the court shall award the moving party costs and reasonable attorney's fees, including such costs and fees incurred in connection with the filing of the special motion to dismiss. . . ."

[24]Because subject matter jurisdiction cannot be waived and may be raised at any time, we reject the defendants' contention that the plaintiff waived his jurisdictional challenge to the trial court's consideration of the anti-SLAPP motions by failing to raise it before the trial court.

generally "must fully resolve [that issue] before proceeding further with the case." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813, 786 A.2d 1091 (2002). From this " 'jurisdiction first' rule"; *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 839 n.6, 826 A.2d 1102 (2003); flows two principles applicable to the plaintiff's claim that the court erred by addressing the special motion to dismiss. First, when a potential jurisdictional defect is brought to the court's attention, the court must dispose of that issue first, "no matter in what form it is presented." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 813; see, e.g., *Palosz* v. *Greenwich*, 184 Conn. App. 201, 207, 194 A.3d 885 (addressing claim of sovereign immunity, which implicates subject matter jurisdiction, that was raised in motion to strike), cert. denied, 330 Conn. 930, 194 A.3d 778 (2018); *Sethi* v. *Yagildere*, 136 Conn. App. 767, 770 and n.6, 47 A.3d 892 (treating motion for summary judgment for lack of standing as motion to dismiss), cert. denied, 307 Conn. 905, 53 A.3d 220 (2012). Second, because "any movement is necessarily the exercise of jurisdiction"; (internal quotation marks omitted) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996); once the trial court determines that it lacks subject matter jurisdiction, "it need not, and cannot, consider additional claims raised by a defendant." (Internal quotation marks omitted.) *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 788 n.12, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024); see, e.g., *Schaghticoke Tribal Nation* v. *Harrison*, supra, 264 Conn. 839 n.6 (court lacked jurisdiction to entertain motion to intervene after it determined that it lacked subject matter jurisdiction); *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 99 (once defendant moves to dismiss for lack of subject matter jurisdiction, court lacks authority to entertain motion to amend aimed at curing jurisdictional defect); *Baldwin Piano & Organ Co.* v. *Blake*, 186 Conn. 295, 298, 441 A.2d 183 (1982) (court erred in ruling on plaintiff's motion for contempt

without first addressing defendant's claim that it lacked subject matter jurisdiction).

In *Robinson* v. *V. D.*, supra, 229 Conn. App. 316, this court applied these principles in holding that, when a defendant raises a litigation privilege claim as a defense in the context of a special motion to dismiss pursuant to § 52-196a, the court must address that claim as a threshold issue before reaching the merits of the special motion to dismiss. See id., 325–26. In *Robinson*, the defendant raised the litigation privilege in a motion labeled as a combined motion to dismiss and special motion to dismiss brought pursuant to both Practice Book § 10-30 and § 52-196a. Id., 325 n.7. The trial court declined to address the motion to dismiss on the basis that the defendant had not expressly requested that the court treat his motion as a "hybrid" motion and, in any event, that our rules of practice do not expressly authorize such hybrid motions. Id. In support of its decision not to address the motion to dismiss portion of the defendant's motion, the court also cited "the expedited time requirements pertaining to a statutory special motion to dismiss [pursuant to § 52-196a]" and "the limited inquiry of [such] a special motion to dismiss . . . ." (Internal quotation marks omitted.) Id. Instead, the court addressed only the special motion to dismiss, which it denied after concluding that "the defendant had failed to meet his burden of showing, by a preponderance of evidence, that the complaint was based on the exercise of his right of free speech, to petition the government, or of association." (Internal quotation marks omitted.) Id., 322.

On appeal, the defendant in *Robinson* renewed his claim that the action was barred by the litigation privilege and, therefore, that the trial court should have dismissed the action for lack of subject matter jurisdiction. Id., 324. This court noted that, although the trial court had not addressed that claim, "[b]ecause . . . absolute immunity . . . implicates the trial court's subject matter jurisdiction, it presents a threshold issue that we must address before turning to the merits of the special motion

to dismiss." Id., 325–26. This court also made clear that the trial court lacked the discretion to decline to address the jurisdictional issue merely because the defendant had not distinctly raised it in a motion to dismiss pursuant to Practice Book § 10-30. In so doing, this court also rejected the trial court's rationale that the expedited nature of the remedy provided by § 52-196a justifies an exception to the general rule requiring courts to address jurisdictional claims before reaching other issues. This court stated that, "[a]lthough a court certainly has broad discretion to manage its docket and resolve cases as it sees fit . . . which arguably would include the discretion to reject a so-called hybrid motion, it is axiomatic that questions pertaining to the subject matter jurisdiction of the court may be raised at any time and by any party . . . and that [o]nce . . . raised, [the challenge] must be disposed of no matter in what form it is presented." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 325 n.7. This court went on to conclude that all but two of the plaintiff's claims were barred by the litigation privilege and, therefore, reversed in part the judgment of the trial court and remanded the case with direction to the trial court to dismiss the counts that were barred by the litigation privilege. Id., 349–50.

We conclude that, under the rationale of *Robinson*, the trial court erred by addressing the special motions to dismiss after it concluded that the litigation privilege barred the plaintiff's claims. As this court explained in *Robinson*, the applicability of the litigation privilege was a threshold issue that implicated the trial court's subject matter jurisdiction and, once that issue was raised, the court was required to address that issue. Id., 325–26. The court did not have discretion to entertain the merits of the special motions to dismiss merely because Sanctuary raised the litigation privilege in that motion as opposed to a motion to dismiss for lack of subject matter jurisdiction.[25] As in *Robinson*, once the jurisdictional challenge was raised, the court was required to "[dis-

[25]We note that, although Sanctuary did not file a motion to dismiss, it expressly argued in its special motion to dismiss that "[t]he applicability

pose] of [it] no matter in what form it [was] presented." (Emphasis omitted; internal quotation marks omitted.) *Robinson* v. *V. D.*, supra, 229 Conn. App. 325 n.7; see also *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 729 (concluding that, even though defendants raised litigation privilege in motion to strike rather than motion to dismiss, trial court erred by allowing plaintiff to replead rather than dismissing action for lack of subject matter jurisdiction after determining that litigation privilege applied). Moreover, once the court determined that the litigation privilege barred the plaintiff's claims, it was required to dismiss the action without proceeding further, as "any action taken after the court determined that absolute immunity applied to all of the plaintiff's causes of action against the defendants is void . . . [because] the court had no jurisdiction." *Bruno* v. *Travelers Cos.*, supra, 729.

In addressing the merits of the special motions to dismiss, the court reached additional issues that went beyond the question of whether the litigation privilege applied. Specifically, pursuant to § 52-196a (e) (3), the court was required to determine whether the defendants had met their burden of establishing that the plaintiff's claims were based on the exercise of their right to petition the government. The court also addressed claims raised by the plaintiff concerning the constitutionality of § 52-196a and considered the plaintiff's request pursuant to § 52-196a (d) for limited discovery as to all defendants except Sanctuary.[26] All of these issues went well beyond the threshold question of whether the court had subject matter jurisdiction over the action. Because the court had already determined that the litigation privilege barred the plaintiff's action, it was required to dismiss the action for lack of subject matter jurisdiction and

of absolute immunity implicates the court's subject matter jurisdiction." (Internal quotation marks omitted.)

[26] The court rejected the plaintiff's argument that § 52-196a violated his right to a jury trial, to due process, and to petition the government. As stated in footnote 8 of this opinion, the court also denied the plaintiff's belated discovery request.

lacked the authority to address any additional claims raised by the parties.

The defendants argue that this court's decision in *Sicignano* v. *Pearce*, 228 Conn. App. 664, 325 A.3d 1127 (2024), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025), which predates our decision in *Robinson* by approximately one month, stands for the proposition that a trial court may address the merits of a special motion to dismiss even when a defendant raises the litigation privilege as a defense in such a motion. As the defendants note, this court in *Sicignano* affirmed on the merits a trial court's decision granting a special motion to dismiss even though the defendants in that case had raised the litigation privilege in connection with that motion. On appeal in *Sicignano*, however, the plaintiff did not raise any claim with respect to the litigation privilege. Rather, as this court explained, the plaintiff in *Sicignano* claimed that the trial court had erred in concluding that the complaint was based on the defendants' exercise of their right to petition the government, but "fail[ed] to address the court's conclusion that [the action was] barred by the defense of absolute immunity based on the litigation privilege." (Internal quotation marks omitted.) Id., 691. Because the issue was not raised or decided in *Sicignano*, that decision has no bearing on our resolution of the plaintiff's claim that the trial court lacked jurisdiction to address the special motions to dismiss. See 21 C.J.S., Courts § 186 (2026) ("[a] court that resolves a case on the merits without discussing its jurisdiction to act does not establish a precedent requiring similar treatment of other cases once the jurisdictional problem has come to light"); see also, e.g., *Pennhurst State School & Hospital* v. *Halderman*, 465 U.S. 89, 119, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ("[w]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this [c]ourt has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us" (internal quotation marks omitted)); *Glidden* v. *Chromalloy American Corp.*, 808 F.2d 621, 625 (7th Cir. 1986) ("[w]hen a court resolves a case on the

merits without discussing its jurisdiction to act, it does not establish a precedent requiring similar treatment of other cases once the jurisdictional problem has come to light"). Accordingly, we conclude that the trial court improperly addressed the special motions to dismiss after concluding that it lacked subject matter jurisdiction over the action and, therefore, that the court's judgment must be vacated to the extent it dismissed the action pursuant to § 52-196a.[27]

The judgment is vacated only as to the granting of the special motions to dismiss and the case is remanded with direction to render a judgment of dismissal for lack of subject matter jurisdiction as to all claims against Sanctuary; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[27]Our conclusion that the court erred by addressing the special motions to dismiss is limited to circumstances like the present case in which the question of the court's subject matter jurisdiction can be decided on the papers, whether on the pleadings alone or the pleadings as supplemented by uncontested facts contained in affidavits. We are cognizant of the fact that, in certain limited circumstances, "[w]hen the jurisdictional facts are intertwined with the merits of the case, the court may in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 616, 109 A.3d 903 (2015). In light of the fact that the anti-SLAPP statute is intended to provide "an expedited off-ramp for a party to avoid further litigation"; (internal quotation marks omitted) *Smith* v. *Supple*, 346 Conn. 928, 947 n.16, 293 A.3d 851 (2023); different considerations may apply when a court is faced with a jurisdictional issue that cannot be resolved promptly. Because those circumstances are not present here, however, we express no view with respect to whether under those circumstances a trial court may rule on a special motion to dismiss that raises a nonjurisdictional defense before deciding the question of subject matter jurisdiction.